**UNITED STATES of America,**
**Plaintiff-Appellant,**

v.

**Richard B. HUNT et al.,**
**Defendants-Appellees.**

**No. 74–1406.**

United States Court of Appeals,
Tenth Circuit.

Argued and Submitted Jan. 23, 1975.

Decided March 21, 1975.

Ann Belanger Durney, Washington, D. C. (Scott P. Crampton, Asst. Atty. Gen.; Gilbert E. Andrews, Bennet N. Hollander, Robert A. Bernstein, Tax Div., Dept. of Justice, Washington, D. C., on the brief; of counsel: Richard V. Thomas, U. S. Atty.), for appellant.

H. Clandillon Phibbs, II, Jackson, Wyo., for appellee, Hunt.

Before HILL, SETH and BARRETT, Circuit Judges.

BARRETT, Circuit Judge.

The United States, plaintiff below (hereinafter referred to as Government, Internal Revenue Service or IRS), appeals from a District Court order granting Summary Judgment to Richard B. Hunt, one of the defendants below (hereinafter referred to as Hunt or appellee), together with an order dismissing its complaint and cause of action. Jurisdiction vests by reason of 28 U.S.C. § 1291.

The Summary Judgment filed by the trial court was based upon the pleadings, a stipulation of agreed material facts, exhibits and hearing. The contentions on appeal involve alleged errors of law. We shall treat them after reviewing the agreed facts.

On May 21, 1968, the joint income tax return of David N. and Betty Burns for the calendar year 1967 was filed. On December 11, 1969, Hunt filed suit against David N. Burns in the Wyoming District Court of Teton County for recovery of sums alleged to be due and owing under two promissory notes and for a partnership accounting. In June, 1970, Hunt caused garnishments and attachments to be issued. Mr. and Mrs. F. Meadows, who had been garnisheed, answered that they held an option to purchase certain stock from Burns. The Meadows exercised the option with Burns on January 29, 1971, and, pursuant to the garnishment commands, tendered the purchase sum of $16,086.94 to the Clerk of the District Court of Teton County.

On June 27, 1971, taxpayer Burns died. Probate proceedings governing his estate were commenced in July and September, 1971. On August 6, 1971, IRS made an assessment of delinquent taxes owing from the tax year 1967, against the estate of the deceased taxpayer Burns and his widow. On January 13, 1972, the IRS filed a claim for taxes in the Burns probate # 832, one of the two petitions filed in connection with his death. On February 23, 1972, the two probates were consolidated effective October 11, 1971, by the District Court of Teton County.

On April 11, 1972, the First National Bank of Kemmerer, Wyoming, was appointed Administrator With Will Annexed of the Estate of Burns. On April 18, Hunt filed a creditor's claim in the Burns probate proceedings, which was thereafter duly set down and heard by the Wyoming Probate Court (the District Court sitting in probate). The Court rendered *oral* judgment in favor of Hunt on all counts on August 9, 1972, reserving only the matter of computation of attorney's fees and interest.

On August 14, 1972, IRS received *actual knowledge of the oral judgment rendered.* Thereafter, on September 12, 1972, IRS filed Federal Tax Levy Notices upon the Clerk of the District Court of Teton County.[1] On October 10, 1972, a written, formal judgment of the District Court in favor of Hunt was formally entered in the office of the clerk of the District Court of Teton County.

---

1. While the federal tax lien arose, as found by the Trial Court, when the assessment of August 6, 1971, was made pursuant to 26 U.S.C. § 6322, still under 26 U.S.C. § 6323(f), the lien is not valid as against any judgment lien creditor until notice thereof has been filed in an office within the state designated by the laws of the state in which the property subject to the lien is situated.

On August 21, 1973, IRS initiated suit in the United States District Court for the District of Wyoming to foreclose its Federal Tax Liens against the funds held by the Clerk of Court of Teton County. The defendants are Richard B. Hunt, Mrs. Jean Boyce, Clerk of the District Court of Teton County, and the First National Bank of Kemmerer, Administrator of the Burns Estate. The IRS alleged that by virtue of the failure of the taxpayer to pay the assessments of $11,412.80, together with interest and additions, liens in favor of the United States arose and attached to all of the property of the taxpayer by virtue of the provisions of Section 6321 of the Internal Revenue Code of 1954,[2] including the garnisheed funds in possession of the Wyoming State District Court, held by the Clerk thereof. The IRS alleged that its tax liens were superior to and had priority over the claims of Hunt and the Clerk of the District Court, Mrs. Jean Boyce. The IRS prayed for an order declaring that its unpaid tax liens of $11,412.80, together with interest and additions, be declared valid and subsisting liens on all of the property and rights to property of the taxpayer, Burns, including the garnisheed funds, that the Court order the foreclosure of said liens against said funds and that the United States have a deficiency judgment against the Burns estate of any sum which may remain unsatisfied.

Hunt contends that none of the IRS assessments were made prior to the filings of Notice of Federal Tax Liens for the assessments in the records of Teton County, Wyoming, on September 12, 1972, after Hunt was granted judgment (orally from the bench) following the August 9, 1972 proceedings. He thus contends: that notwithstanding the IRS assessments and recordation, still the oral judgment established a prior lien in his favor to the attached funds; that the IRS did not, at any time prior to the instant action, undertake to impress its delinquent tax claims, notwithstanding knowledge of the existence of the probate proceedings relative to the Estate of David Norman Burns, and publication of Notice to Creditors (Hunt filed a creditor's claim on August 8, 1972, which was denied, apparently considered by the state court and the parties as a statutory condition precedent to the hearing held leading to the rendition of oral judgment on August 9th); that once the garnisheed funds were delivered into the custody of the court, they were no longer funds in the custody and control of taxpayer Burns, and that the Wyoming District Court had exclusive jurisdiction to determine all right, interest and ownership thereto.

The Trial Court submitted a detailed Memorandum concurrent with execution and entry of the Summary Judgment. The Court declared that a single question was at issue: Does a federal tax lien take priority over a prior unrecorded (Wyoming) judgment lien when the Government (IRS) had *actual* knowledge of the rendition of the judgment? The Court found that the District Court for Teton County heard and decided the case between Hunt and the taxpayer on August 9, 1972, ". . . rendering judgment (orally from the bench) in favor of Hunt on the promissory notes, reserving only the computation of attorney's fees and interest." [R. Vol. I, p. 59]; that on August 14, 1972, the IRS received and had actual knowledge that the judgment had been rendered; that on September 12, 1972, the IRS filed federal tax levy notices with the Clerk of that court; that ". . . on October 10, 1972, judgment was formally entered in the suit by Hunt against taxpayer, based on the decision rendered on August 9, 1972." [R. Vol. I, p. 59].

**2.** Internal Revenue Code of 1954, 26 U.S.C. § 6321. Lien for Taxes.

If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.

Further, the Trial Court found that under § 6321, *supra*, a lien arises and attaches to all property of any person who has failed or refused to pay taxes due when the assessment is made, as provided under § 6322, *supra*; that the lien imposed by § 6321, shall not be valid against any judgment lien creditor until notice thereof has been filed in the office where the property subject to the lien (the amount deposited with the Clerk of the District Court upon attachment), is situated as provided by § 6323(f), *supra; and that the notice perfecting the assessment was filed on September 12, 1972, after the judgment had been rendered but before it was formally entered.* [Emphasis supplied].

While recognizing that the effect of a lien in relation to a provision of federal law for the collection of debts owing the United States is always a federal question, the Trial Court relied on Platte County State Bank v. Frantz, 33 Wyo. 326, 239 P. 531 (1925), for the rule that a Writ of Attachment *creates* a lien as of the date of service, and that the garnisheed monies were properly in the custody of the court, giving creditor Hunt a paramount and choate right, although not title, until judgment, to the property as security for his claim. Even so, the Court leaned heavily upon the fact that the IRS had *actual notice* long before *entry* of the formal judgment and that by reason thereof, "the government cannot be heard to claim that it was an innocent bystander." The Court recognized that a federal tax lien cannot be defeated by a prior state-created lien, unless the latter is choate. The detailed Trial Court memorandum covered many other points and issues.

The IRS appeals, alleging error in that: (1) Hunt was not a judgment lien creditor on September 12, 1972, because his lien was inchoate at that time and was not perfected under state law until the subsequent entry of the judgment; and (2) even assuming that it was proper to grant Hunt's motion for summary judgment, the District Court erred in dismissing the entire complaint, because

certain issues raised by the complaint were never reached or considered.

## I.

At the threshold we must consider the IRS contention that the Trial Court erred in treating Hunt as a judgment lien creditor on September 12, 1972, allegedly because at that time his lien was inchoate and not perfected under the law of Wyoming, and could not have been perfected *until the entry of judgment.* [Emphasis supplied].

■ We note, just as did the Trial Court, that the question of when a state-created lien has acquired sufficient substance and has become so perfected that it will defeat a later-arising or later-filed federal tax lien is a matter of federal law. United States v. Pioneer American Insurance Co., 374 U.S. 84, 83 S.Ct. 1651, 10 L.Ed.2d 770 (1963); United States v. Scovil, 348 U.S. 218, 75 S.Ct. 244, 99 L.Ed. 271 (1955); T. H. Rogers Lumber Company v. Apel, 468 F.2d 14 (10th Cir. 1972). However, it is fundamental that in determining whether and to what extent *a taxpayer had property or rights to property to which the federal tax lien could attach,* both federal and state courts must look to state law. [Emphasis supplied]. Aquilino v. United States, 363 U.S. 509, 80 S.Ct. 1277, 4 L.Ed.2d 1365 (1960); United States v. Hershberger, 475 F.2d 677 (10th Cir. 1973); United States v. Woodard, 444 F.2d 752 (10th Cir. 1971).

Thus, the nature and extent of taxpayer Burns' interest in the funds garnisheed by Hunt from Meadows in conjunction with his complaint for judgment on the promissory notes he alleged to be past due and owing by decedent Burns (taxpayer) must be ascertained under the above rules based upon the fact that the IRS assessments were not filed until after the garnishment-attachment was effected. Significantly, at that time the funds were not within the custody, possession or control of the taxpayer.

The IRS points to the Treasury Regulations of Procedure and Administration (1954 Code), Section 301.6323–1(b), (26

C.F.R.), for the general rule that "The term 'judgment' does not include an inchoate lien, such as an attachment, unless and until such lien has ripened with a judgment." The IRS cites United States v. Gilbert Associates, Inc., 345 U.S. 361, 364, 73 S.Ct. 701, 703, 97 L.Ed. 1071 (1953), for the rule that it is not enough that the state proceedings be "something 'in the nature of a judgment,'" but that the statutory language must be read "in the usual, conventional sense of a judgment of a court of record." In that case, the Supreme Court ruled that a New Hampshire state court decision which held that a prior municipal assessment for ad valorem taxes followed by a non-judicial tax sale constituted the town a "judgment creditor" within the meaning of the federal statute was erroneous. The Court said:

> A cardinal principle of Congress in its tax scheme is uniformity, as far as may be. Therefore, a "judgment creditor" should have the same application in all the states. In this instance, we think Congress used the words "judgment creditor" in § 3672 in *the usual, conventional sense of a judgment of a court of record, since all states have such courts.* [Emphasis supplied].
>
> 345 U.S. 361 at 364, 73 S.Ct. at 703.

The *Gilbert* opinion quoted Mr. Justice Jackson's language in United States v. Security Trust & Savings Bank, Executor et al., 340 U.S. 47, 52, 71 S.Ct. 111, 114, 95 L.Ed. 53 (1950), that ". . . the history of this tax lien statute (federal) indicates that only a judgment creditor in the conventional sense is protected."

In *Gilbert, supra,* after holding that the Town was not a judgment creditor and that the Town and the United States were both general lienholders on all of the taxpayer's property, the Court significantly observed:

> In claims of this type (general lienholder claims) "specificity" requires that the lien be *attached to certain property by reducing it to possession, on the theory that the United States*

has no claim against property no longer in the possession of the debtor. Thelusson v. Smith, 2 Wheat. 396 [4 L.Ed. 271]. *Until such possession it remains a general lien. . . . The record reveals (there is no ground for the contention that the Town had perfected its lien by reducing the property to possession) . . . the taxpayer had not been divested by the Town of either title or possession. The Town, therefore, had only a general, unperfected lien.* United States v. Waddill, Holland & Flinn, Inc., [323 U.S. 353, 65 S.Ct. 304, 89 L.Ed. 294], *supra;* People of State of Illinois ex rel. Gordon v. Campbell, 329 U.S. 362, 370 [67 S.Ct. 340, 345, 91 L.Ed. 348]. [Emphasis supplied].

345 U.S. 361 at 366, 73 S.Ct. at 704.

The latter cited case, i. e., Illinois v. Campbell, *supra,* noted that the Supreme Court had not previously decided whether the statutory lien priority of the United States under the then existing bankruptcy statutes is overcome by a fully perfected and specific lien, and that while a state court's characterization of a lien as specific and perfected is not conclusive (in those cases where the claim of priority of the federal lien is in issue), still the state characterization, though entitled to weight, is subject to re-examination by the Supreme Court.

In United States v. Security Trust & Savings Bank, Executor, et al., *supra,* the Court noted that the Supreme Court of California had described its statutory attachment lien as inchoate, granting the attaching creditor only a potential right or a contingent lien and that numerous contingencies might arise that would prevent the attachment lien from ever becoming perfected by a judgment awarded and recorded. The IRS contends that this decision, considered together with United States v. Acri et al., 348 U.S. 211, 75 S.Ct. 239, 99 L.Ed. 264 (1955), and United States v. City of New Britain, 347 U.S. 81, 74 S.Ct. 367, 98 L.Ed. 520 (1954), establish the federal rule that in order for a state created lien to be "perfected" or "choate" so as to

prevail over a federal tax lien, it must be reduced to a judgment which is valid, final and conclusive, not only as between the debtor and creditor, but as to all third parties. Further, the IRS cites 3 Powell on Real Property, Par. 478, pp. 702–703, 705 (1973), for the proposition that before any judgment becomes valid or final it requires some kind of notation on official court records before it can base a lien.

The Trial Court found that the monies in the case at bar were paid into the state court following Hunt's complaint, pursuant to court authorized writs of attachment and garnishment issued under the terms and provisions of § 1–226, W.S.1957. Further, the Court interpreted Platte County State Bank v. Frantz, *supra,* for the rule that under Wyoming law a writ of attachment creates a lien as of the date of service for the benefit of the attaching creditor. Section 1–243, W.S.1957, provides in pertinent part:

> An order of attachment shall bind the property attached from the time of service; and the garnishee shall stand liable to the plaintiff in attachment to the amount of the property, moneys, credits, and effects in his possession or under his control belonging to the defendant . . . to the extent of his right or interest therein . . . except such as may be by law exempt from execution, from the time he is served . . .

The Trial Court relied, and significantly so in our opinion, on Great Falls Transfer and Storage Company v. Pan American Petroleum Corporation, 353 F.2d 348 (10th Cir. 1965), where this court held, interpreting § 1–243, *supra, that the issuing court acquires jurisdiction of the debt upon service of writs of attachment or garnishment subject to its process; that the garnishee became liable to the garnishor to the extent of the debt until discharged or any judgment recovered is satisfied; and that priority of time of service of writs of attachment determines.* [Emphasis supplied]. While it is true that neither *Frantz, supra,* nor *Great Falls, supra,* involved lien claims

of the United States, still the test here is twofold, i. e., whether the Hunt lien was "choate" following garnishment and surrender of the funds into the custody of the Wyoming state court, and whether the oral judgment rendered Hunt a "judgment creditor" against the IRS challenge.

The Trial Court held that the filing of the suit by Hunt, coupled with the subsequent garnishment proceedings, resulting in deposit of the funds, rendered Hunt's lien choate in meeting the commands of United States v. City of New Britain, *supra,* in that: (a) the lienor (Hunt) was established; (b) the property subject to the lien (funds owing by Meadows to Burns under the option) had been established and, in fact, seized and *placed in the court's custody*; and (c) the amount of the lien, excluding fees and interest, had been established by the oral judgment rendered on August 9, 1972. We agree.

We further hold that the Trial Court properly distinguished the case at bar from United States v. Acri, *supra.* In the latter case, which was an action for wrongful death, the amount of the lien was contingent upon the outcome of the damage suit, whereas here the amount of the lien was fixed by the amounts due on the two promissory notes.

In ruling on the IRS contention that its lien is entitled to priority because judgment was not *entered* prior to the IRS filing of its lien notice, the Trial Court found that the judgment in favor of Hunt was *rendered* on August 9, 1972, and that rendition is the judicial act of the court in pronouncing the sentence of the law on the facts in controversy, as distinguished from entry, *which is the clerical act of the court of spreading the judgment on the record,* relying on § 1–314, W.S.1957; 49 C.J.S. Judgments § 64; 46 Am.Jur.2d, Judgments, § 55; People ex rel. Schwartz v. Fagerholm, 17 Ill.2d 131, 161 N.E.2d 20 (1959); 49 C.J.S. Judgments §§ 100, 107.

The parties acknowledge that there are no reported Wyoming decisions controlling in resolving the dispute as to

whether the oral judgment of the court from the bench or the subsequent formal, written judgment filed of record several weeks after the oral pronouncement constituted Hunt a "judgment creditor" in satisfaction of the federal tax statute. IRS argues that the oral pronouncement, at best, would qualify as "something in the nature of a judgment" but that it falls short of the standard of a judgment "in the usual, conventional sense."

We hold that the Trial Court's findings and conclusions are not clearly erroneous. Rule 52, Fed.R.Civ.P. While the issue is not clear of doubt, the views of a federal district judge, who is a resident of the state where the controversy arose in a case involving interpretation of state law, carry extraordinary force on appeal where there are no state decisions on point or none which provide a clear precedent. United States v. Wyoming National Bank of Casper, 505 F.2d 1064 (10th Cir. 1974); Hardy Salt Company v. Southern Pacific Transportation Company, 501 F.2d 1156 (10th Cir. 1974); Casper v. Neubert, 489 F.2d 543 (10th Cir. 1973). An appellate court is not called upon to decide whether the Trial Court reached the correct conclusion of law, but only whether it reached a permissible conclusion. Hodgson v. Okada, 472 F.2d 965 (10th Cir. 1973).

The IRS cites State v. Scott, 35 Wyo. 108, 247 P. 699 (1926), for the proposition that an oral rendition of judgment does not constitute a judgment in the conventional sense. However, that case dealt with proceedings for the removal of a county commissioner from office, and not rendition of oral judgment in relation to the language of the Wyoming attachment statutes. To the same effect, IRS reliance on Hahn v. Citizens' State Bank, 25 Wyo. 467, 171 P. 889 (Wyo.1918), is misplaced. That decision dealt with the finality of judgments in relation to appeals therefrom.

Rule 54, W.R.C.P. defines a judgment as a final determination of the rights of the parties in action. Generally, until it is entered, the judgment is not final, or

subject to appeal. Wheatland Irrigation District v. Two Bar-Muleshoe Water Company, 431 P.2d 257 (Wyo.1967). But the time for appeal between parties to the suit begins to run from the time the Court overrules a motion for new trial, and not from the date of entry of judgment. Conradt v. Lepper, 13 Wyo. 99, 78 P. 1 (1904).

Rule 58(b) W.R.C.P. provides that a judgment or final order in any case shall be deemed to be entered whenever a form of such judgment or final order, signed by the trial judge, is filed in the office of the clerk of the court in which the case is pending. *If no such form of judgment or final order is signed by such trial judge in any case, then the actual entry of the judgment or final order on the journal of the proper court shall govern.* [Emphasis supplied]. In United States v. Evans, 365 F.2d 95, 97 (10th Cir. 1966), this Court, speaking through Judge Hill, held, inter alia, that in determining whether a judicial act is a final judgment (and thus appealable) "this court puts importance upon the intention of the judge . . ." and favorably quoted from Carnes v. United States, 279 F.2d 378, 380 (10th Cir. 1960), cert. denied 364 U.S. 846, 81 S.Ct. 88, 5 L.Ed.2d 69 (1960):

> When the Judge acts in a manner which clearly indicates his intention that the act shall be the final one in the case, and a notation of the act has been entered on the docket, the time to appeal begins to run under Rule 73(a).

365 F.2d 95 at 97.

## II.

We are not, of course, here concerned with a final judgment or order subject to appeal, inasmuch as the IRS was *not* a party to the Wyoming State District Court proceedings. The above cited cases are relevant, however, in light of the emphasis that the Trial Court placed upon the fact that *prior to the entry of judgment in favor of Hunt* the IRS had *actual notice* of the rendition of the oral

judgment of August 9, 1972. The Trial Court held that although interest and fees were not determined at that time, such would seem to be an incident to the decision and would not add to its force and effect. We agree. Furthermore, and critically here, the Trial Court held that having actual notice has been held to take the place of, or requirement for, constructive notice, citing Heyward v. United States, 2 F.2d 467 (5th Cir. 1924); Gable, Inc. v. Kerl, 334 Pa. 441, 6 A.2d 275 (1939); Anno. 122 A.L.R. 909.

The IRS contends, however, that there is no authority for the proposition that the Federal Government is bound by state rules of actual notice in federal tax lien cases. The argument is simple: 26 U.S.C. § 6323, is a technical statute and its guiding principle is "first in time is the first in right" and that Hunt had not perfected a judgment creditor lien at the date the IRS perfected its lien by filing notice thereof. The argument, we submit, simply begs the question. United States v. Brosnan, 363 U.S. 237, 80 S.Ct. 1108, 4 L.Ed.2d 1192 (1960), holds that 26 U.S.C. § 7424 authorizing the United States to intervene in order to assert a federal tax lien is not exclusive and that the Congress *did not* intend thereby to exclude the application of state procedures in the extinguishment of a junior federal tax lien. This intent is evidenced by 28 U.S.C. § 2410 which provides, inter alia, that the United States may be named as a party in a state court civil action involving adjudication of lien claims, including those of the United States. Questions involving entitlement to payment of claims under this section are to be decided by the law of the state where the property is located or situate. United States v. John Hancock Mutual Life Insurance Co., 364 U.S. 301, 81 S.Ct. 1, 5 L.Ed.2d 1 (1960).

In Western Union Telegraph Co. v. Dismang, 106 F.2d 362 (10th Cir. 1939), the late Chief Judge Phillips, writing for this Court, stated unequivocally that:

The judgment is the pronouncement of the court from the bench. The clerk's entry is not the judgment, but merely the formal evidence thereof . . . The entry is made by the clerk in the performance of a ministerial duty.

106 F.2d 362 at 363–364.

The above rule was previously declared by this Court in Foster v. Zerbst, 92 F.2d 950 (10th Cir. 1937), and Continental Oil Co. v. Mulich, 70 F.2d 521 (10th Cir. 1934). *See also*, Commissioner v. Estate of Bedford, 325 U.S. 283, 65 S.Ct. 1157, 89 L.Ed. 1611 (1945); 46 Am. Jur.2d, Judgments, § 1; 20 Am.Jur.2d, Courts, § 73; 46 Am.Jur.2d, Judgments, § 55; Anno. 73 A.L.R.2d 250. To be sure, the rule, as applied, is one between the parties before the court. That does not detract, in our view, from the fact that Hunt was a "judgment creditor" on the date of the state court's oral pronouncement, and further that the IRS "notice" thereof worked to estop it from challenging Hunt's claim to the garnisheed funds in this suit.

In addition to the actual notice of the United States of the oral judgment, it was also on notice of the terms of § 1–358, W.S.1957, which provides, inter alia, that goods and chattels of the debtor shall be bound (following judgment) from the time they are seized in execution (and thus in the custody and control of the court). Furthermore, the IRS was on notice of the provisions of § 1–243, W.S.1957, *supra.*

Section 1–249, W.S.1957, provides that the court may make proper orders for the preservation of the attached property during the pendency of the suit. Section 1–253, W.S.1957, provides that a garnishee may pay the money owing to the defendant into court. Section 1–258, W.S.1957, provides, inter alia, that if judgment is rendered in favor of the plaintiff, the court may direct the payment of so much of the property and money *so surrendered as the court deems right and proper.* Of special interest here—in relation to the IRS's actual notice of the rendition by the state court oral judgment in favor of Hunt—are the following Wyoming statutes and rules:

(1) § 1–263, W.S.1957, C. 1965. If personal property which has been attached be claimed *by any person other than defendant* . . . such proceedings must be had thereon . . as if the property had been seized upon execution, and claimed by a third person.

(2) W.R.C.P., Rule 24. Intervention.

(a) Intervention of Right.

Upon timely application anyone shall be permitted to intervene in an action . . . (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

(b) Permissive Intervention.

Upon timely application anyone may be permitted to intervene in an action . . . (2) when an applicant's *claim or defense and the main action have a question of law or fact in common.*

Nothing in this record indicates that either Rule 19 W.R.C.P. entitled "Necessary Joinder of Parties" or Rule 20 W.R.C.P. entitled "Permissive Joinder of Parties" apply because the state trial court apparently was not officially aware of the IRS claim by reason of any *affirmative* pursuit of the garnisheed funds in the custody of the court by the IRS.

The attitude of the IRS insofar as the Wyoming state district court is concerned, seems to be that nothing that court undertook to do by judgment relative to the garnisheed funds could in anywise interfere with its claim of superiority thereto, even though no IRS claim or contention was *in fact* formally presented or advanced for consideration or determination by the state court—and this, we repeat, notwithstanding that the IRS was fully aware of the Hunt claim, the state court proceedings and the fact that oral judgment had been rendered on behalf of Hunt.

While it is not for us here to determine what if any relief may have been accorded the IRS had it formally applied for intervention in the state proceedings prior to entry of formal judgment, it is clear to us that under the provisions of Rule 60, W.R.C.P., Wyoming district courts have been granted broad discretionary power, *upon motion*, to set aside "a final judgment, order, or proceeding" for a number of specific reasons, including "any other reason justifying relief from the operation of the judgment." Such action may be justified in the avoidance of a multiplicity of suits.

We deem it important to further note—in relation to the notice actually received by IRS—that § 1–69, W.S.1957, provides that "Any court, for good cause shown, other than the absence of evidence, may continue any action *at any stage of the proceedings,* at the cost of the applicant, to be paid as the court shall direct." [Emphasis supplied].

Under the circumstances of this record, it is difficult, if not impossible, to attribute good faith to the IRS in its intentional by-pass of the Wyoming District Court following *actual notice* of the nature and status of those proceedings. We have found no cases which, in our judgment, justify the unilateral action of the IRS in initiating the instant action before the United States District Court for the District of Wyoming for the express purpose of impressing its lien claim against the very funds *held in the custody of and under the control of the State District Court.* While recognizing the fundamental rule that liens for federal taxes and their enforcement are controlled by federal law, still state law determines the nature of the property rights against which a United States tax lien is asserted and the rights of the United States to the proceeds. United States v. Bess, 357 U.S. 51, 78 S.Ct. 1054, 2 L.Ed.2d 1135 (1958); Folsom v. United States, 306 F.2d 361 (5th Cir. 1962).

The promotion of proper Federal-State relations in the interest of sound judicial administration and in further

recognition of the principles of comity would, we submit, dictate the avoidance of the needless conflict generated here. It seems that had the IRS intervened and had the Wyoming State court's decision on the priority issue had been adverse to the IRS claim that such determination, while entitled to weight, would be subject to re-examination by the federal courts because the issue involves a determination of the rank or priority of a federal tax lien. 35 Am.Jur.2d, Federal Tax Enforcement, § 21 and cases cited. Indeed, the federal statutes contemplate that the IRS shall petition to intervene in a civil action or suit in which it is not a party to assert a federal tax lien on the property which it contends to be the subject of the action or suit. The rules of property and fixing the incidents of property ownership involve law of the state where the property is located. The federal lien statutes create no property rights, but attach consequences federally defined, to rights created under state law. Aquilino v. United States, *supra*; United States v. Bess, *supra*. If the Government's application to intervene should have been denied, the adjudication would have had no effect upon the tax lien. 26 U.S.C. § 7424, as amended (Pub.L. 89–719, 1966); 35 Am. Jur.2d, Federal Tax Enforcement, § 65, p. 94.

▆▆▆ The IRS was not at liberty, upon knowledge of the fact that the funds in the case at bar had been garnisheed and delivered into the custody of the Wyoming state court, and that oral judgment had been rendered on behalf of Hunt, to ignore those proceedings or the jurisdiction of the court. Property and funds in custodia legis are not attachable or garnishable when they are already in the custody of the attaching or levying officer under civil process in a prior case. Such property is under the sole direction, order and disposition of the court. 6 Am.Jur.2d, Attachment and Garnishment, §§ 196, 197; Mundil v. Hutson, 33 N.M. 388, 268 P. 566, 59 A.L.R. 522; First Nat. Bank v. Corporation Commission of North Carolina, 161 Md. 508, 157 A. 748, 86 A.L.R. 1407.

## III.

▆▆▆ The IRS alleges Trial Court error in dismissal of the Government's complaint and cause of action. The dismissal of the IRS complaint and cause of action relating to the federal tax liens and their applicability to the funds held in the custody of the Wyoming State District Court was proper and not in error. We agree, however, that it was error to dismiss the entire complaint and cause of action with prejudice in view of the fact that the merits of two IRS allegations relating to taxpayer Burns' alleged tax liabilities were not at issue, i. e., whether the taxpayer is indebted to the United States for tax deficiency of $11,412.80 and the extent of the IRS right to proceed over and against the taxpayer's estate for delinquency judgment and/or any other proceedings which may be authorized in aid thereof.

We affirm the Trial Court grant of Summary Judgment in favor of Hunt and against the IRS and its order of dismissal of the IRS complaint and cause of action with prejudice insofar as it relates to the claim against the garnisheed funds held in the custody of the Wyoming State District Court awarded to Hunt. We reverse that portion of the Trial Court judgment dismissing the complaint and cause of action of IRS relating to the claimed tax deficiency owing by Burns to the United States and the Government's right to proceed over and against the taxpayer's estate or otherwise as by law authorized for the collection of the claimed tax delinquency.