**Mel R. ESKANOS, et al., Plaintiffs,**

v.

**ALPHA 76, INC., et al., Defendants.**

**Civ. A. No. 87–C–435.**

United States District Court,
D. Colorado.

April 26, 1989.

Mel R. Eskanos, Colorado Springs, Colo., pro se.

Don A. McCullough, Denver, Colo., for Daniel A. Nigbur.

John Randolph Torbet, Colorado Springs, Colo., for Daniel A. Nigbur and Mark R. Nigbur.

Jerry Atencio, Asst. U.S. Atty., Denver, Colo. and Mark G. Fraase, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C., for the U.S.

## MEMORANDUM OPINION AND ORDER

CARRIGAN, District Judge.

Pro se plaintiffs Mel R. Eskanos and Rochelle Barkan, d/b/a/ Eskanos & Co., a partnership, commenced this action on May 17, 1985 by filing a complaint in the state district court for El Paso County, Colorado. On May 23, 1985, Elwood Henderson, d/b/a Henderson Auctioneer, was allowed to interplead and deposit into the court registry the proceeds of an auction (the "Fund"). The government then intervened in the state court action and removed it to this court. Plaintiffs claim a right to a security interest in the Fund. The government claims a right to the Fund because of assessments made against the defendants for unpaid federal employment taxes. Jurisdiction is predicated upon 28 U.S.C. §§ 1331 and 1340.

The following facts appear undisputed: Plaintiffs entered into a business lease agreement with the defendants Daniel A. Nigbur and Mark R. Nigbur, d/b/a Alpha 76, Inc. ("Alpha 76"), on February 24, 1983. The four-year agreement leased a parcel of real property in Colorado Springs, Colorado. Beginning on March 15, 1984, Alpha 76 failed to pay its monthly rent, and by April 15, 1985, Alpha 76 owed the plaintiffs approximately $7,000 for rent and utilities.

On April 15, 1985, the plaintiffs served on the defendants a demand for payment of rent or possession. In late April 1985, the plaintiffs had Alpha 76's personal property auctioned. The auction netted $4,493.56, which amount constitutes the Fund here at issue.

On May 21, 1984, and again on January 28, 1985, Alpha 76 had been assessed by the federal government for unpaid federal employment taxes. Pursuant to 26 U.S.C. § 6323(f)(1)(A)(ii), notices of tax liens were filed with the Colorado Secretary of State on October 3, 1984 and May 8, 1985. On May 10, 1985, the Internal Revenue Service ("IRS") mailed a notice of levy for Alpha 76's unpaid taxes to the auctioneer, Henderson, who at that time was still in possession of the Fund. The notice of levy stated that Alpha 76 owed $9,847.94 in delinquent taxes.

On May 17, 1985, the plaintiffs commenced this action in state court to recover the amounts owed for rent and utilities. On April 9, 1986, judgment by default was entered against Alpha 76 in the amount of $32,342.80. On April 15, 1986, Henderson filed a motion requesting permission to disperse the Fund to the IRS. On February 18, 1987, the federal government moved to intervene in the state court action and filed

a claim to the Fund. On March 9, 1987, the state court granted the motion to intervene, and on March 25, 1987, the government filed its petition for removal. The Fund was then transferred into this court's registry.[1]

Currently pending is the government's motion for summary judgment. Under Fed.R.Civ.P., Rule 56(c) summary judgment is proper "if admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In *Catrett*, the Court held that Rule 56 mandates the entry of summary judgment, upon motion made after adequate time for discovery, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party ultimately will bear the burden of proof at trial. *Id.* at 322, 106 S.Ct. at 2552–53.

The parties have briefed the issues and oral argument would not materially assist my decision.

■ Under 26 U.S.C. § 6321, the federal government may impose a tax lien upon "all property and rights to property" belonging to a delinquent taxpayer. Such a lien is created when the IRS makes an assessment against the taxpayer. *Pittsburgh Nat. Bank v. United States*, 657 F.2d 36, 38 (3d Cir.1981). If the taxpayer fails to pay the assessment after notice and a demand for payment, the IRS may levy upon "all property and rights to property" that belong to the taxpayer and are subject to a federal tax lien. 26 U.S.C. § 6321.

■ Federal law is controlling for purposes of determining whether a lien will attach to such property or rights to property. *Viva Ltd. v. United States*, 490 F.Supp. 1002, 1005 (D.Colo.1980). In order for a state-law created lien to be superior to a federal tax levy, it must be both choate

and first in time. *United States v. Pioneer American Insurance Co.*, 374 U.S. 84, 88, 83 S.Ct. 1651, 1654–55, 10 L.Ed.2d 770 (1963). "To be choate, the lien must be perfected so that there is nothing more to be done, that the identity of the lienor, the property subject to the lien, and the amount of the lien are established." *United States v. Bell Credit Union*, 635 F.Supp. 501, 504 (D.Kan.1986). "These requirements of first in time and choateness give federal tax liens an extraordinary priority, justifiable only by the importance of securing adequate revenues to discharge national obligations, and limited therefore to tax liens." *Id.*

The government contends that because federal tax liens arose on the dates of assessment on all property rights belonging to Alpha 76, including the auctioned personal property, the tax liens attached to the auction proceeds.

Plaintiffs, in their Answer to the Claim of the United States, assert four arguments in support of their contention that they held a security interest in the auctioned personal property entitling them to priority over the federal tax lien. Specifically, they contend that: (1) they held a security interest in the property by virtue of the business lease agreement between Alpha 76 and them, and an insurance policy covering Alpha 76's personal property; (2) they were pledgees of the personal property; (3) the 45–day safe-harbor provisions contained in 26 U.S.C. § 6323(c) and (d) are applicable in the present action based on "equitable grounds"; and (4) as landlords they were entitled to priority status pursuant to 26 U.S.C. § 6323(b)(6)(C), for utility charges.

In response, the government correctly asserts that the plaintiffs' first three arguments all depend on whether the plaintiffs held a security interest in Alpha 76's personal property, as that term is defined in § 6323(h)(1). The government insists that the plaintiffs did not hold a security interest in Alpha 76's personal property because

---

**1.** On July 1, 1988, I ordered that the Fund be deposited by the Clerk of the Court into a federally insured, interest-bearing account (or a 90- day certificate of deposit) until further order of the court.

822

the federal tax liens were prior and superior to the plaintiffs' claims, and that the plaintiffs had no security interest within the meaning of the § 6323 exceptions.

With respect to the plaintiffs' fourth argument, the government contends that the plaintiffs are not entitled to a landlord's lien pursuant to § 6323(b)(6)(C) for amounts owed for utilities because that section is inapplicable to this case.

I shall address these two contentions in the order just presented.

A. *Superpriority Status under § 6323.*

A federal tax lien is perfected on the date of assessment and is entitled to priority as to all liens *except* those persons and liens described in 26 U.S.C. § 6323. *Sgro v. United States,* 609 F.2d 1259, 1261 (7th Cir.1979).

Section 6323, 26 U.S.C., provides, in relevant part:

"(a) Purchasers, Holders of Security Interests, Mechanic's Lienors, and Judgment Lien Creditors—The lien imposed by section 6321 shall not be valid as against any purchaser, *holder of a security interest,* mechanic's lienor, or judgment lien creditor until notice thereof which meets the requirements of subsection (f) has been filed by the Secretary.

"(b) Protection for Certain Interests Even Though Notice Filed—Even though notice of a lien imposed by section 6321 has been filed, such lien shall not be valid—

(1) Securities—With respect to a security (as defined in subsection (h)(4)—

(A) as against a purchaser of such security who at the time of purchase did not have actual notice or knowledge of the existence of such lien; and

(B) as against a *holder* of a security interest in such security who, *at the time such interest came into existence, did not have actual notice or knowledge of the existence of such lien.*

\* \* \* \* \* \*

"(h) The term 'security interest' means any interest in property acquired by con-

tract for the purpose of securing payment or performance of an obligation or indemnifying against loss or liability. A security interest exists at any time (A) if, at such time, the property is in existence and the interest has become protected under local law against a subsequent judgment or lien arising out of an unsecured obligation, and (B) to the extent that, at such time, the holder has parted with money or money's worth." (Emphasis added.)

Thus if the plaintiffs can establish that they held a security interest in the Alpha 76 property, as that term is defined in § 6323(h), and that they had no actual notice or knowledge of the federal tax liens at the time of possession, then the exception of § 6323(b)(1)(B) applies, and the plaintiffs are entitled to superpriority status over the United States' liens on the Fund.

In order to come under the § 6323(h) definition of "security interest," the plaintiffs must establish the following three elements: (1) the existence of property that was acquired by contract for the purpose of securing payment or performance of an obligation, or indemnifying against loss or liability; (2) that their interest in such property was protected under local law against a subsequent judgment or lien arising out of an unsecured obligation; and (3) that they parted with money or money's worth in acquiring that interest.

As mentioned above, the plaintiffs argue that a security interest in the auctioned personal property was created by their business lease agreement with Alpha 76, and the insurance policy covering the personal property. In response, the government contends that because the plaintiffs filed neither the business lease agreement nor the insurance policy with the Colorado Secretary of State, their interest was not "perfected" against subsequent judgment liens. In support, the government cites *United States v. Ed Lusk Const. Co.,* 504 F.2d 328, 331 (10th Cir.1974), where the court held that a bank did not perfect or protect its security interest under an Arkansas statute because it failed to file in

the state of Arkansas prior to the time the United States filed its tax liens in Washington, D.C.

■ I agree with the government that the plaintiffs' failure to file a security agreement with the Colorado secretary of state precludes the plaintiffs from asserting a right to the Fund based on a security agreement created by either the business lease agreement or the insurance policy.

■ However, the plaintiffs, in their response to the United States' Motion for Summary Judgment, present an additional argument in support of their contention that they had a security interest in the auctioned property. Specifically, they allege the following: The purpose of auctioning the Alpha 76 personal property was to satisfy past rent arrearages. Once the property was sold, the plaintiffs' interest in the property was converted into "money", which under the definition of Section 6323(h)(4), is a security. The interest in the property was also allegedly acquired by contract; that is, by a pledge from Alpha 76 that the property be converted to cash in satisfaction of past rent due. Next, the plaintiffs assert that the purpose of Alpha 76 pledging the property to the plaintiffs was to secure the obligation of rent payments and that the property was "in existence" at the time of the auction.

Plaintiffs then contend that their security interest became protected under local law because Colo.Rev.Stat. § 4–9–304(1) "mandates that a security interest in money can only be perfected by the secured party's taking possession." Possession of the money was accomplished, plaintiffs assert, by their agent, the auctioneer. In support of the contention that the auctioneer can act as its agent, the plaintiffs cite Official Comment 2 to Colo.Rev.Stat. § 4–9–305. That comment provides that "[p]ossession may be by the secured party himself or by an agent on his behalf."

Finally, the plaintiffs assert that they have satisfied the final requirement of § 6323(h) because in obtaining the interest in the personal property, they parted with "money or money's worth." More specifically, they cite 26 C.F.R. § 301.6323(h)–1 for the proposition that money's worth may include past consideration if allowed by local law. The local law relied on by the plaintiffs is Colo.Rev.Stat. § 4–1–201(44)(b), which provides that value is given for rights acquired "as security for or in total or partial satisfaction of a pre-existing claim." Plaintiffs assert that the property pledged by Alpha 76 to them, which was later converted into money at the auction, was in satisfaction of a pre-existing claim against Alpha 76 for rent due. According to the plaintiffs, this satisfies the Colo.Rev. Stat. definition of "value," and therefore satisfies § 6323(h)'s requirement of giving money's worth.

In response, the government contends that the plaintiffs' argument is wholly without merit because:

"[T]he personal property of the taxpayer was encumbered by the federal tax liens prior to the sale of the property by the auctioneer. Accordingly, when the property was sold, it was still subject to the federal tax liens, and the plaintiffs did not benefit by the property being sold at auction, that is, acquiring an interest upon the conversion to defeat the properly filed Notices of Federal Tax Lien." (Reply, at 3.)

Importantly, however, the government's response fails to negate the plaintiffs' contention that: (1) immediately following the auction of Alpha 76's personal property the plaintiffs had a security interest in the auction proceeds, and that such interest was perfected through possession by their agent, the auctioneer; and (2) at that time the plaintiffs had no actual notice or knowledge of the government's tax liens asserted against the property.

I conclude that the question whether, immediately following the auction, the plaintiffs had actual notice or knowledge of the tax liens, presents a genuine issue of material fact that precludes granting the defendants' motion for summary judgment on the plaintiffs' claim for superpriority

status under § 6323(b)(1)(B).[2]

### B. *Landlord's Lien.*

■ The government contends that the plaintiffs are not entitled to a landlord's lien for utility charges on the property under 26 U.S.C. § 6323(b)(6)(C) because: (1) that statute only applies to real property; (2) that statute does not contemplate that a landlord is "an instrumentality of the utility company"; and (3) the Business Lease Agreement and insurance policy are not entitled under Colorado Law to priority over security interests in such property which are prior in time. (Memorandum, at 14.)

Section 6323(b)(6)(C) clearly establishes that it only applies only to real property. Thus I agree with the government and therefore conclude that the plaintiffs are not entitled to a landlord's lien on Alpha 76's personal property.

Nevertheless, because I have concluded, *supra*, that at least one genuine issue of material fact exists with respect to the plaintiffs' claim of superpriority status under 26 U.S.C. § 6323(b)(1)(B), the government's motion for summary judgment must be denied.

Accordingly, IT IS ORDERED that the United States' motion for summary judgment is denied.

IT IS FURTHER ORDERED that within 11 days the parties shall confer and make a good faith effort to resolve by settlement the remaining issues in this case. The parties are ordered to report in writing to this court the settlement status of the case within 20 days. Absent a settlement, the parties shall apply to U.S. Magistrate Hilbert Schauer to conduct a settlement conference as soon as he can arrange one and thereafter shall report the case status to this court within one week.

---

**2.** Plaintiffs allege that some of the property sold at the auction belonged to them and not to Alpha 76. Even if this were true, the proper action for the plaintiffs to recover their property is one for wrongful levy under 26 U.S.C. § 7426, and not the instant interpleader action.