Mel R. ESKANOS and Rochelle Barkan, a partnership, d/b/a Eskanos & Co., Plaintiffs,

and

Elwood Henderson, d/b/a Henderson Auctioneer, Interpleader Plaintiff,

v.

ALPHA 76, INC., Mark R. Nigbur, Daniel Allen Nigbur and Daniel Alexander Nigbur, Defendants,

and

the United States of America, Defendant–Intervenor.

Civ. A. No. 87 N 435.

United States District Court, D. Colorado.

July 12, 1991.

Mel R. Eskanos, pro se.

William G. Pharo, Asst. U.S. Atty., Denver, Colo., Karen Lynne Baker, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C., for defendants.

## MEMORANDUM OPINION AND ORDER

NOTTINGHAM, District Judge.

Defendant Alpha 76, Inc. is a failed business formerly run by the Nigburs, the other defendants. While it was in its death throes, Alpha agreed with plaintiffs, its landlords, to sell some of its personal property and apply the proceeds to arrearages in rental payments due under its lease with plaintiffs. Interpleader Plaintiff Elwood Henderson, an auctioneer, sold the property on April 27, 1985, and had the net proceeds—some $4,693.56—in hand.

Before Henderson could do anything with the auction proceeds, the United States Internal Revenue Service served him with a notice of levy, demanding that he deliver the money to the IRS in partial satisfaction of Alpha's federal tax delinquencies. Faced with the conflicting demands of the landlords and the IRS, Henderson, after deducting $200.00 in attorney fees he incurred in dealing with the conflicting demands, delivered the balance of the money to the Colorado state court handling the litigation between plaintiffs and Alpha concerning Alpha's overdue rent payments. The IRS intervened and removed the case to this court. Through attrition, the lawsuit has narrowed to a

contest between the landlords (who claim that Alpha owed them rent) and the IRS (which claims that Alpha owed it taxes) over the $4,493.56 in auction proceeds which has been deposited by this court's clerk into an interest-bearing account.

The matter is before the court on plaintiffs' motion for summary judgment, which was filed shortly after the court denied the Government's motion for summary judgment. *See Eskanos v. Alpha 76, Inc.*, 712 F.Supp. 819 (D.Colo.1989). The primary issue presented by both motions is whether, under the provisions of 26 U.S.C. § 6323 (1988), plaintiffs' claim to the money now deposited in the registry of the court prevails over the Government's claim arising from federal tax liens. Plaintiffs rely specifically on section 6323(b)(1)(B), arguing that this section applies because they hold a security interest in the money, having taken that security interest without *actual* notice or knowledge of the Government's liens. For reasons recited below, I deny plaintiffs' motion for summary judgment on the ground that plaintiffs do not have a security interest.in the money and therefore cannot rely on section 6323(b)(1)(B). I also reconsider the ruling denying the Government's motion for summary judgment and hold that the Government is entitled, as a matter of law, to satisfy any tax liens *recorded* before April 27, 1985 (the date Alpha's personal property was auctioned), out of the money on deposit with the court. As to tax liens recorded after April 27, 1985, disputed questions of fact preclude entry of summary judgment for either party. A trial will be necessary to resolve the parties' rights in any money which may remain after the Government has satisfied its liens recorded before April 27, 1985.

## FACTS

Most of the pertinent facts are recited in Judge Carrigan's prior opinion for the court. *See Eskanos*, 712 F.Supp. at 820–21. Instead of repeating them here, I will simply underscore certain matters for clarity and provide additional detail which I regard as significant. Much of this detail has to do with the exact nature and status of the respective claims.

*The Factual Basis for Plaintiffs' Claim*

Plaintiffs owned a shopping center in El Paso County, Colorado. Alpha rented a store in the center to carry on its business of selling silk screen prints. The document defining plaintiffs' basic relationship with Alpha, their erstwhile tenant, is a five-page lease demising the real property on which the store sat. The lease requires monthly rental payments and outlines the landlords' remedies for the tenant's breach of the covenant to pay rent or any other covenant in the lease. The lease, however, does not mention tenant's personal property located on the premises or elsewhere, much less grant the landlords any interest in that property. The lease was not recorded with the Colorado Secretary of State or the El Paso County Clerk and Recorder.

Alpha failed to pay all rent due under the lease. Its default commenced in March 1984 and continued through April 1985. On April 16, 1985, plaintiffs demanded possession of the premises, and, on April 19, 1985, Alpha surrendered physical possession of the premises. On May 17, 1985, plaintiffs filed this lawsuit (in state court) to recover damages caused by Alpha's failure to pay rent and other breaches of the lease.

As matters were coming to a head during April of 1985, a sale of Alpha's personal property was arranged. As noted earlier, Elwood Henderson auctioned the property on April 27, 1985, and received the money which is now in the court registry. The circumstances leading up to the auction are disputed. The Government asserts that Alpha initiated the auction and hired Henderson. *Memorandum of Law in Support of United States' Motion for Summary Judgment* at 4 (filed Sept. 11, 1987) (hereinafter cited as "Government's Brief"). Therefore, the Government implies, Henderson was acting at all times on behalf of Alpha, and plaintiffs never acquired any sort of interest in the personal property or the money netted by the sale. Plaintiffs, however, assert that they had an agreement with Alpha, pursuant to which

they were permitted to take possession of Alpha's personal property and sell it in partial satisfaction of rent arrearages. According to plaintiffs, they took physical possession of the personal property on April 19, 1985 (the same day they got possession of the premises) and then arranged with Henderson to sell the property on April 27, 1985. *Plaintiff's [sic] Response in Opposition to United States' Motion for Summary Judgment* at 4–5 (filed Nov. 12, 1987). Both parties rest their positions on statements in their respective briefs and fail to offer evidence. To the extent that these disputed versions of events are material to any claim, then, the dispute will preclude summary judgment on that claim.

*The Factual Basis for the Government's Claim*

At about the same time it got behind in its rental payments, Alpha also failed to make its quarterly payments of federal withholding and unemployment taxes. As of April 27, 1985, the date of the auction, the Government had made five separate assessments against Alpha, its taxpayer and plaintiffs' lessee. *Ex. C and D to Declaration of Mark G. Fraase* (filed Sept. 11, 1987). (In its brief, the Government claims there were six, *Government's Brief* at 4, but an assessment for $129.35 does not appear in the IRS Certificates of Assessments and Payments for Alpha; I therefore ignore the claim in the Government's Brief.) Two were made on May 21, 1984; three were made on January 25, 1985. Only the first two of these assessments were recorded as of April 27, 1985. *Ex. E to Declaration of Mark G. Fraase.* According to the recording document, they were filed with both the Colorado Secretary of State and the El Paso County, Colorado, Clerk and Recorder on October 3, 1984. *Id.* The remaining three assessments were not recorded until May 8, 1985. *Id.*

### ANALYSIS

*Landlords' Claim to Super–Priority Status Under Section 6323(b)(1)(B)*

Plaintiffs argue that they have a "super-priority" security interest in the auction proceeds which, under 26 U.S.C. § 6323(b)(1)(B) (1988), trumps all of the Government's tax liens, whenever they were recorded. Section 6323(b)(1)(B) protects a "holder of a security interest" in a "security" from both recorded and unrecorded federal tax liens, provided that the holder takes his interest without "actual notice or knowledge" of the federal tax liens. All of these quoted terms are defined in sections 6323(h) and 6323(i). The term "security" is defined to include "money," as well as other documents more commonly regarded as "securities," such as bonds, debentures, notes, shares of stock, *etc. See* 26 U.S.C. § 6323(h)(4) (1988).

Plaintiffs' theory for applying section 6323(b)(1)(B) rests on the proposition that Alpha's agreement to relinquish possession of its personal property, to acquiesce in sale of the property, and to have the proceeds used in satisfaction of Alpha's rent arrearages effectively gave plaintiffs an interest in that property to secure payment of the arrearages. The security interest was perfected, according to plaintiffs, when they took possession of the property. When the property was sold, plaintiffs continue, that interest became a security interest in the "money" obtained. Thus, plaintiffs conclude, they have the type of "super-priority" security interest protected by section 6323(b)(1)(B), if they took the interest without "actual notice or knowledge" of the Government's tax liens.

Plaintiffs claim that they lacked actual knowledge of the tax liens, and they have supported their claim with affidavits. The Government does not appear to contest this claim; at any rate, it has not met its burden to supply factual material suggesting that the claim is in dispute. *See, e.g., Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (where moving party has carried the initial burden of production placed on it by rule 56, non-moving party must set forth specific facts showing a genuine issue for trial). I will therefore assume the claim to be true and proceed to consider whether plaintiffs have a "super-priority" interest in the auction proceeds and are

entitled to summary judgment awarding the proceeds to them.

■ I have concluded that plaintiffs are not entitled to summary judgment on their "super-priority" claim, for two reasons. First, as I indicated earlier, plaintiffs' claim to any sort of an interest in Alpha's personal property or the proceeds thereof rests on factual assertions supported only by their briefs, not by evidence they have submitted. The Government disputes these factual assertions in its own brief. The burden of proving the existence of a security interest protected under section 6323(b)(1)(B) is on the party invoking the protection of that statute. Plaintiffs' failure to carry their evidentiary burden precludes summary judgment in their favor. *See, e.g., Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

■ Even if plaintiffs could prove the truth of their assertions about events leading up to the sale of the personal property, section 6323(b)(1)(B) cannot sensibly be applied to give plaintiffs "super-priority" in this situation. Even if one assumes (1) an agreement between plaintiffs and Alpha in April 1985 to secure rent arrearages by a pledge of Alpha's personal property and (2) perfection of plaintiffs' interest by possession, plaintiffs thereby acquired, at most, a perfected security interest in goods. *See United States v. Hunt,* 513 F.2d 129, 133 (10th Cir.1975) (state law characterizes the nature of property right competing with federal tax lien); Colo.Rev.Stat. § 4-9-105(1)(h) (1973 & 1990 Cum.Supp.) (definition of "goods"). Plaintiffs promptly sold these goods at auction, effectively exercising remedies available to a secured party under the Uniform Commercial Code when a debtor is in default. *See* Colo.Rev.Stat. § 4-9-504 (1973) (secured party has right to sell collateral). When the goods were sold and the money collected, plaintiffs did not, contrary to their contention, retain a security interest which somehow attached to the money; rather, their security interest in the goods was discharged and the money was taken in satisfaction of that security interest. *See* Colo.Rev.Stat. § 4-9-504(4) (1973) (disposition of collateral "discharges the security interest under which it is made"). To put the matter in terms of the controlling definition of a "security interest" in section 6323(h)(1), plaintiffs did not acquire their interest in the money proceeds of the auction "for the purpose of securing payment or performance of an obligation," 26 U.S.C. § 6323(h)(1) (1988); they acquired that interest in satisfaction of the obligation. Since they did not have a "security interest" in the money, they are not entitled to the "super-priority" status conferred by section 6323(b)(1)(B).

*Landlords' Claims to Priority Status Under Section 6323(a)*

Although I do not think plaintiffs' claim to "super-priority" status under section 6323(b)(1)(B) can possibly enable them to defeat any of the Government's tax liens on any state of facts which they could prove in this case, there remains a question concerning the parties' relative priority under section 6323(a). Section 6323(a) applies to holders of security interests in all types of property belonging to a taxpayer, not just in "securities" and other types of property covered by section 6323(b). Section 6323(a), however, provides less protection to the security interests which it covers: whereas a security interest in property covered by section 6323(b) defeats recorded *and* unrecorded tax liens, a security interest in property covered by section 6323(a) defeats only unrecorded liens. Part of the basis for the Government's motion for summary judgment, which was denied by the court's prior opinion in this case, was the argument that plaintiffs have no "security interest" which would have priority under section 6323(a). Having reviewed the matter and concluded that the Government was partly right (although not for the reasons it advances), I have decided to reconsider parts of the prior opinion.

■ Plaintiffs argue that the lease between them and Alpha was intended to give them a security interest in Alpha's personal property on the premises. They point to a lease provision requiring Alpha to insure

"all the building contents" and to the fact that plaintiffs were named as additional insureds under the policy insuring the contents. This is insufficient to create a "security interest" as that term is defined in section 6323(h)(1). I agree with Judge Carrigan (*Eskanos*, 712 F.Supp. at 823) that, at least with respect to the lessee's personal property which was sold to produce the money in dispute here, the lease gives plaintiffs no "security interest," because the lease was not recorded anywhere, remained unperfected, and was therefore not "protected under local law against a subsequent judgment lien arising out of an unsecured obligation." 26 U.S.C. § 6323(h)(1) (1988). *See also* Colo.Rev.Stat. § 4–9–301(1)(2) (1973 & 1990 Cum.Supp.) (unperfected security interest loses to hypothetical lien creditor). Moreover, I have reviewed the lease and found that it does not mention the lessee's personal property, much less describe the property. It is thus insufficient to create a security interest in that property, notwithstanding plaintiffs' contention that it was the parties' unexpressed intention to do so. Colo.Rev.Stat. § 4–9–203(1)(b) (1973 & 1990 Cum.Supp.) (security interest not enforceable unless debtor [lessee here] signed a security agreement which contains a "description of the collateral").

██ Until Alpha agreed in April of 1985 to relinquish possession of the personal property and permit it to be sold in partial satisfaction of rent arrearages, then, plaintiffs were nothing more than unsecured creditors of Alpha. It is clear that the two tax assessments which were properly recorded on October 3, 1984, are prior to plaintiffs' unsecured claims, since such recorded liens defeat even perfected security interests. 26 U.S.C. §§ 6323(a), 6323(h)(1) (1988). The Government is thus entitled, as a matter of law, to judgment satisfying the remaining amounts of these two liens out of the money in the registry of the court.

██ The situation is different with respect to the tax liens which were unrecorded as of April 27, 1985, the date of the auction. Those liens may be defeated by a "purchaser" of the goods or by the "holder of a security interest" in the goods, the terms "security interest" and "purchaser" having been defined in section 6323(h)(1). As I have indicated, the question of how the events immediately preceding the sale are to be characterized is a disputed issue which I cannot resolve as a matter of law on the record before me. Viewing the facts in a light most favorable to plaintiffs, they may have a security interest (perfected by possession) which would be entitled to priority over the Government's unrecorded liens. If money remains in the court's registry after the Government's two recorded liens are paid, resolution of the parties' rights in the remaining money will need to await trial or further proceedings in the case.

On the basis of the foregoing, it is

ORDERED as follows:

1. Plaintiffs' motion for summary judgment is denied.

2. The Government's motion for summary judgment is granted, in part. The Government will have judgment awarding it such part of the money in the registry of the court as will satisfy the current balance on the two assessments made on May 21, 1984, and recorded on October 3, 1984.

3. To assist the clerk in calculating amounts due under the preceding paragraph, the Government will, within 15 days of the date of this order, submit a certificate of assessments and payment or similar evidence establishing the balance of the two assessments made on May 21, 1984. If plaintiffs object to the Government's submission, they will file a response within 11 days after the Government's material is served.

4. Except as provided in paragraph 2, the Government's summary judgment motion is denied.