CAROL L. TROYER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent; EMMETT K. TROYER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Troyer v. Commissioner
Docket Nos. 38490-86; 38491-86.
United States Tax Court
T.C. Memo 1989-218; 1989 Tax Ct. Memo LEXIS 217; 57 T.C.M. (CCH) 334; T.C.M. (RIA) 89218; May 4, 1989
Nicholas T. Kitsos, for the petitioners. Janine M. Poronsky, for the respondent. GERBER
MEMORANDUM FINDINGS OF FACT AND OPINION GERBER, Judge: Respondent determined the following income tax deficiencies for Carol L. Troyer: Taxable
Additions to Tax, I.R.C. Sections
Year
Income Tax
6651(a)(1) [1]
6653(a)
6654
1977
$ 70,501.03
$ 17,625.25
$ 3,525.05
$ 2,338.32
1978
50,696.32
12,674.08
2,534.82
1,618.40
1979
49,473.80
12,368.45
2,473.69
2,972.20
1980
44,523.50
11,130.87
2,226.18
2,836.81
Respondent determined the following income tax deficiencies *219 for Emmett K. Troyer: Taxable
Additions to Tax, I.R.C. Sections
Year
Income Tax
6651(a)
6653(a)
6654
1977
$ 181,349.46
$ 45,259.96
$ 9,067.47
$ 6,002.01
1978
48,259.12
12,064.78
2,412.96
1,540.59
1979
47,493.51
11,873.37
2,374.68
1,989.25
1980
42,783.32
10,695.83
2,139.17
2,725.94
The issues presented for our consideration are: (1) Whether petitioners effectively transferred their for-profit business endeavors into a nontaxable entity; (2) whether petitioners failed to file returns and/or failed to report income in the amounts determined by respondent; (3) whether petitioners have shown that they are entitled to deductions in excess of those determined by respondent; (4) whether petitioners are liable for additions to the tax under sections 6651(a)(1), 6653(a) and 6654; and (5) whether damages should be awarded under section 6673. FINDINGS OF FACT The parties entered into an oral stipulation of facts and exhibits which are incorporated by this reference. Petitioners were husband and wife during the years in issue and these cases have been consolidated for purposes of trial, briefing and opinion. Petitioners had four *220 or five children during the years in issue. Petitioners resided at South Bend, Indiana, at the time of the filing of their petitions in these cases. Petitioners, Emmett K. Troyer (Mr. Troyer) and Carol L. Troyer (Mrs. Troyer), either individually or jointly, did not file individual Federal income tax returns for the taxable years 1977, 1978, 1979 or 1980. Petitioners operated a business which built swimming pools and also performed general construction work. Prior to 1977 the business was operated in a corporate form and was a Subchapter "S" corporation for Federal tax purposes. The corporation operated under the name "Troyer's Pool & Building, Inc." (Building). Mr. Troyer was the sole shareholder and ostensible president and Mrs. Troyer was the secretary/treasurer of Building. Prior to 1977, books of account were maintained for Building by petitioners and an accountant. At least one and sometimes both petitioners had signatory authority over various bank accounts entitled as follows: (a) Troyer's Pool & Building, Inc., Account No. 470-201-6; (b) Life Science Church of River Park, Account No. 420-519-9; (c) The Pool & Patio Place Division of Life Science Church of River Park, *221 Account No. 042-0519-9; (d) Troyer's Pool & Patio Place, Account No. 16-515-8; (e) Carol L. Troyer, Account No. 45-734-5; (f) Troyer's Pool & Building, Inc., Equipment Division, Account No. 412-496-6; (g) Troyer's Investments, Account No. 10-703-4. By a form document dated October 17, 1977, Mrs. Troyer, along with two other named "trustees," formed the Life Science Church of River Park (Church) and during 1977 petitioners deeded their personal residence to the Church. The Church charter was also executed in the name of "William E. Drexler, D.D., J.D., Bishop and Dean of Life Science College." In the latter part of 1977 the name of Building was changed to "Troyer's (or The) Pool & Patio Place" and in December 1977 Building was dissolved. Petitioners continued the same business operation under the new name but discontinued the maintenance of books of account and no longer employed the services of an accountant. The building in which the business was conducted had been purchased by petitioners prior to 1977, but was deeded to the Church during 1977. In addition to the above-listed names the business was sometimes called "Troyer's Pool & Building Division of the Life Science Church *222 of River Park." During 1977 Mr. Troyer signed a "Vow Of Poverty" and both petitioners signed "Notice & Affidavit of Religious Resignation from the Social Security Program," which documents were submitted to the Government. Prior to 1977 Mrs. Troyer had been involved in various religious activities. At some time prior to or during 1977 Mrs. Troyer held some form of independent and unaffiliated religious meetings in her home. In an attempt to expand these activities by generating more funds, petitioners consulted with an accountant and some lawyers and formulated a plan to convert their business and income producing activities into a nontaxable entity. The effect of their plan was to reduce the tax burden upon the business activity to generate more funds for religious purposes. Although Mrs. Troyer had no personal knowledge about William Drexler, she relied heavily upon his stated credentials, including the statements that he was "a lawyer and former judge." With that understanding, petitioners, along with some family friends who were also engaged in the swimming pool business, formed the Church. Mrs. Troyer believed that any wages she received as a member of a religious order would *223 be exempt from taxes. During 1982 "LIFE SCIENCE CHURCH OF RIVER PARK a/k/a Troyer's Pool 'n Patio Place Div. of Life Science Church of River Park, an unincorporated religious organization," was petitioned into a Federal bankruptcy proceeding in the United States Bankruptcy Court for the Northern District of Indiana. On May 19, 1983, the Internal Revenue Service filed a Proof of Claim asserting a claim against the estate, but no amounts, years, types of tax, etc., were set forth in the Government claim. During March 1983 respondent issued eight Internal Revenue administrative summonses to third-party recordkeepers (banks) seeking production of banking records for accounts on which petitioners were signatories. Respondent sought enforcement of the summons in the United States District Court, Northern District, Indiana. Petitioners objected to compliance with the summonses on the ground that some or all of the information sought constituted the "books of account of a church" which may be prohibited by section 7605(c). The District Court in enforcing the summonses held: The IRS investigation is being conducted to determine the correct tax liability of [Mr. and Mrs. Troyer], not *224 to determine whether the church is engaged in unrelated, taxable activities. A valid purpose was established in this summons action and the records sought were only those over which [Mr. and Mrs. Troyer] had signatory privileges, records which could conceivably provide information regarding the petitioners' tax liabilities. * * * For the taxable year ended April 30, 1976, Building filed a Form 1120S, U.S. Small Business Corporation Income Tax Return reflecting gross receipts of $ 212,537.84 and a gross profit of $ 87,421.71. Also reflected on that return was compensation to petitioners of $ 10,930.00. For the taxable year ended April 30, 1977, Building attempted filing a Form 1120S reflecting gross receipts of $ 179,274.43 and a gross profit of $ 76,556.45. Also reflected on the April 30, 1977, return was compensation to Mr. Troyer of $ 7,700. This Form 1120S was not accepted by respondent because the jurat had been lined out or eliminated. For 1977 Mr. Troyer attempted to file an incomplete Form 1040 document with a "Vow of Poverty" and a Form W-2 attached and with the jurat eradicated. Prior to 1976, petitioners jointly filed Forms 1040, U.S. Individual Income Tax Returns, *225 reflecting the following amounts of adjusted gross income: Year
Wages
Interest
Other
Total
1973
$ 10,725.00
$    13.30
$ 2,470.57
$ 13,208.87
1974
14,568.40
14.54
7,046.75
21,629.69
1975
13,730.00
680.96
9,828.76
24,239.72
1976
8,400.00
1,609.52
1,664.79
11,674.31
The "Other" income amounts represented sources of income reflected on Schedules C, E and R as follows: Year
Contracting
Music School
Rentals
Total
1973
$ 1,220.56
[2] ($1,176.40)
$    73.61
$ 2,470.57
1974
5,272.12
[2] (802.76)
2,577.39
7,046.75
1975
9,265.09
[3] (1,111.61)
[4] 1,675.28
9,828.76
1976
-0-   -0-    1,664.79
1,664.79
*226 Respondent performed a bank deposit analysis for the taxable years 1977 through 1980. With respect to the corporate bank account(s), respondent's agent began his analysis of deposits beginning May 1, 1977, after the conclusion of the last taxable reporting period, before petitioners attempted to cause their for-profit businesses to be part of a nonprofit organization. Respondent analyzed all deposits to petitioners' accounts, including the business denominated accounts, and eliminated all transfers between accounts and nontaxable items known to respondent. Respondent's bank deposit analysis resulted in net bank deposits of $ 137,997.12, $ 119,134.84, $ 119,211.38 and $ 85,060.52 for 1977, 1978, 1979 and 1980, respectively. All of the unexplained deposits were treated as income to petitioners. Respondent, in the notices of deficiency, did not allow any expenses or deductions, with the following exceptions of pool construction compensation of $ 17,244.61, $ 29,328.34, $ 29,795.77 and $ 2,933.30 for 1977, 1978, 1979 and 1980, respectively. Respondent, during the course of the trial, reviewed checks and other documents of petitioners concerning deductions from pool construction *227 revenue and agreed to expenses or deductions in the amounts of $ 102,055.55, $ 116,048.24, $ 106,891.88 and $ 66,595.58 for the taxable years 1977, 1978, 1979 and 1980, respectively. With the exception of the taxable year 1977, the deductions agreed to by respondent allowed for pool construction compensation in excess of the amounts determined in the notices of deficiency. With respect to 1977 respondent agreed to $ 8,482.01, whereas in the notice of deficiency respondent allowed $ 17,244.61, a difference of $ 8,762.60. Petitioners have not shown that they are entitled to deductions more than agreed to by respondent and found by this Court above, with the exception of $ 8,762.60 which petitioners are entitled to in addition to the $ 102,055.55 agreed to by respondent. Respondent, for Mr. Troyer's 1977 taxable year, included a dividend in the amount of $ 148,217.00. That amount apparently represents the gross receipts less salaries and officer's compensation of Building for the taxable year ended April 30, 1977. Although petitioners attempted to file a Form 1120S return for Building's taxable year ended April 30, 1977, respondent did not accept the return because the jurat clause *228 ("penalty for perjury clause") had been stricken from the signature portion of the return. Based upon the deductions agreed to by respondent and the relative ratios of profit to receipts for subsequent taxable periods, Mr. Troyer's taxable income from Building for 1977 was $ 18,405.69 in addition to any wages or officer's compensation already determined to be income to Mr. Troyer by respondent, rather than the $ 148,217.00 determined by respondent. For 1977, Mr. Troyer received income of $ 7,198.00 attributable to forgiveness of indebtedness when Building was dissolved without satisfaction of a loan receivable due from Mr. Troyer. Respondent determined that Mrs. Troyer had income of $ 1,229.67, $ 3,569.04, $ 2,912.18 and $ 2,563.37 from teaching piano during 1977, 1978, 1979 and 1980, respectively. Petitioners sold their pianos during 1974 and did not report any losses or gains from teaching piano for 1975 and 1976. Mrs. Troyer did not teach piano during 1977, 1978, 1979 and 1980 and petitioner did not receive any income from that activity during the taxable years in issue. OPINION We must first consider whether petitioners are liable for any income tax from the swimming *229 pool business for the years 1977, 1978, 1979 and 1980. If petitioners are liable, then we must decide the amount of the income tax deficiency and/or the additions to tax, if any. Petitioners contend [5] that the Church and swimming pool business were "legal entities" and were separate and apart from petitioners. Petitioners thus concluded that the income, if any, is the Church's income. Petitioners bear the burden of proving that respondent's determination is in error. ; Rule 142(a). Initially, petitioners sought to reduce their tax burden by attempting to place their business activity into a tax-exempt entity. On brief petitioners acknowledge that the placement of a profit-making business operation within a tax-exempt entity does not necessarily eliminate the imposition of income tax on the business income. See sections 511-513; . *230 Here, however, petitioners operated profit-making business enterprises, filed tax returns and reported income and paid tax until 1977. Sometime during 1977, petitioners executed the documents from a mail-order ministry kit from William E. Drexler, the self-proclaimed bishop and founder of the Life Science Church. Petitioners filled in the blanks provided in the pro forma documents and opened a bank account in the name of their Life Science Church. Petitioners also deeded their residence and business real property to their Life Science Church. Thereafter, petitioners continued the swimming pool business as before, but ceased formal bookkeeping and did not file any returns for themselves or the business activity or entity. The facts in this case as they relate to the establishment of a Life Science Church are strikingly similar to other cases decided by this Court. In particular, see , affd. , and . Here, as in the cited cases, nothing changed after petitioners executed the pro forma documents. They continued to operate *231 their pool business and pursue their personal activities as before. If petitioners had irrevocably transferred their business enterprise to a charitable activity or church with sacerdotal activity, we would then have to consider whether income from the business activity was taxable to them. But here petitioners merely went through the formalities of executing the documents from a "mail-order ministry" kit. ;, affd. without published opinion . We hold that petitioners' Life Science Church was not a separate and distinct principal and that petitioners remained responsible for any tax liability generated from their business activities for the taxable years 1977, 1978, 1979 and 1980. As we stated in , and repeated in -- the "church," by its very nature, merges the secular with the sacerdotal and must be seen as an impermissible attempt "to transmute the commercial into the ecclesiastical and thus avoid the congressional *232 separation of taxable individual income and tax-exempt religious order income." Having decided that petitioners are responsible to report and pay tax upon any taxable income of the business enterprises involved, we must now redetermine the amount of petitioners' liability, if any. Mrs. Troyer has argued that she was not a shareholder of Building and that, accordingly, she is not responsible for any income from the swimming pool business. Respondent agrees with Mrs. Troyer concerning income from Building for its taxable year ended April 30, 1977. Following the dissolution of Building, however, respondent determined, in separate notices of deficiency and in the alternative, that Mr. Troyer and Mrs. Troyer were each responsible for the income from the swimming pool business. Both petitioners were officers of Building and Mrs. Troyer became stated "trustee" and/or "minister" of the Church. Petitioners both had absolute possession and control of the bank accounts and assets of the Church during the 4 years under consideration. Accordingly, we find that each petitioner is liable for one-half of the tax liability that may be redetermined. The record regarding exemptions is unclear *233 in that petitioners had "four or five children" during the years in issue. Petitioner did not present specific evidence as to the date of birth of their fifth child and we find, for purposes of Federal income tax exemptions, petitioners had four children for 1977, 1978 and 1979; and five children for 1980. In this regard, Mr. Troyer is entitled to a total of three exemptions, including himself, for 1977, 1978, 1979 and 1980 and Mrs. Troyer is entitled to three exemptions, including herself, for 1977, 1978, 1979; and Mrs. Troyer is entitled to four exemptions, including herself, for 1980. We also hold that petitioners are liable for any self-employment tax that may be due for the years in issue. Petitioners failed to keep adequate books and records of their business activity and respondent may utilize methods of reconstructing taxpayers' income. . Respondent is entitled to use a reconstruction method in cases where a taxpayer has no books and records or inadequate books and records. ;; ; *234 ; . Here, respondent utilized the bank deposits method and petitioners have not shown any nontaxable sources that would reduce respondent's computations of income. Respondent, in the notices of deficiency, allowed only salary and wage expenses as deductions against the income determined by means of the bank deposits method. During the trial, respondent reviewed checks and other documents of petitioners and agreed to expenses of petitioners' business which are allowable. Those amounts have been found in the findings of this opinion, and the parties will compute the resulting income tax due under Rule 155. Petitioners failed to file Federal income tax returns for the taxable years 1977, 1978, 1979 and 1980. Respondent determined additions to tax under sections 6651(a)(1), 6653(a) and 6654. Mr. Troyer attempted to file a document purporting to be a return for 1977. The document had the jurat eradicated and also had a "Vow of Poverty" attached. This document did not constitute a valid return of income. , *235 cert. denied ; , cert. denied . Petitioners have not shown that reasonable cause existed or that they were not negligent within the meaning of sections 6651(a)(1) or 6653(a). ; . We find it difficult to accept, or possibly to believe, that intelligent individuals like petitioners would believe that they could avoid any tax on their business income merely by executing pro forma mail order documents without giving up control of their business or its fruits. Moreover, even if petitioners had properly transferred their business activity to a nonprofit organization, records should have been maintained and any benefits or wages received by petitioners for their efforts to earn income on behalf of the business would likely have been taxable to petitioners. See, e.g., , affg. ; . *236 Accordingly, petitioners are each liable for additions to tax pursuant to sections 6651(a)(1), 6653(a) and 6654 for the taxable years 1977, 1978, 1979 and 1980. Finally, respondent seeks damages to be awarded to the United States under section 6673 because of the frivolous nature of petitioners' legal position and because this case was instituted and maintained primarily for purposes of delay. In the particular setting of this case and exercising our discretion we decline to award damages under section 6673 in this proceeding. To reflect the foregoing, Decisions will be entered under Rule 155.
Footnotes
1. Section references are to the Internal Revenue Code of 1954 as amended and in effect during the years in issue. Rule references are to this Court's Rules of Practice and Procedure.↩
2. The $ 1,176.40 amount for 1973 was attributable to one Schedule C reflecting a business name of "Carol's School of Music" with "Music Instruction" shown as the business activity. The ($ 802.76) loss for 1974 is composed of two schedule C amounts and one supplemental schedule reflecting a loss of ($ 1,022.00) from the sale of pianos. The Schedule C amounts for 1974 included a gain of $ 386.72 and a ($ 167.48) loss from Carol's School of Music and "Troyer's Ministries", respectively. The Schedule C for Troyer's Ministries reflected "Record Sales" as the business activity. ↩
3. For 1975 the only Schedule C reflected the business name "Troyer's Ministries" and no Schedules C were attached to the 1976 return. ↩
4. This amount is composed of a ($ 930.39) loss from rental operations and $ 2,605.67 in reportable gains from the sale of rental realty.↩
5. Petitioners, even though represented by an attorney, submitted inadequate briefs which did not have references to the record with respect to proposed findings of fact and which were without the citation of any statutes, regulations, caselaw or other sources of the law.↩