983 F.2d 1074
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Emmett K. TROYER, et al., Defendants-Appellants.[2]
 No. 91-3560.
 United States Court of Appeals, Seventh Circuit.
 Submitted Dec. 14, 1992.[1]
Decided Dec. 16, 1992.
Rehearing and Rehearing En Banc
Denied Jan. 25, 1993.
 
 Before BAUER, Chief Judge, and CUMMINGS, Circuit Judge, and ESCHBACH, Senior Circuit Judge.
 
 ORDER
 
 1
 The Government brought this action under 26 U.S.C. § 7403 against Emmett K. Troyer and Carol L. Troyer, individually and in their capacity as trustees of the Life Science Church of South Bend, Indiana, to reduce to judgment outstanding federal tax assessments against the Troyers in the amount of $50,031.19, to set aside as fraudulent the Troyers' conveyances of two parcels of property located at 1820 East Colfax Avenue and 3105 Mishawaka Avenue in South Bend, and to foreclose its tax liens against the Troyers' interests in these properties.[3] The district court gave the Government summary judgment and ordered foreclosure. This appeal followed.
 
 
 2
 Our review of the record leads us to agree with the district court that the Troyers were the equitable owners of the South Bend property. We therefore affirm its decision reducing the assessments to judgment and ordering foreclosure of the tax liens against the real estate for the reasons stated in Parts IV. and V.B. of the attached Memorandum and Order.
 
 
 3
 In their brief, the Troyers contest the validity of the IRS's assessments on numerous grounds, but none is sufficient to rebut the presumption that such assessments are correct. Avco Delta Corp. Canada Ltd. v. United States, 540 F.2d 258, 262 (7th Cir.1976), cert. denied sub nom. Canadian Parkhill Pipe Stringing, Ltd. v. United States, 429 U.S. 1040 (1977). First, the Troyers waived any statute of limitations defense by failing to present one to the district court.[4] Saenz v. Young, 811 F.2d 1172, 1173 (7th Cir.1987). Second, they offered no proof that they were prejudiced by the filing of the assessments in this case, or that they had no employees for whom tax liabilities could have accrued. Avco Delta Corp., 540 F.2d at 262. Third, and last, the documents submitted by the Government show that its assessments were duly authenticated. United States v. Chila, 871 F.2d 1015, 1017 (11th Cir.), cert. denied, 493 U.S. 975 (1989).
 
 
 4
 The Troyers also contest the district court's characterization of the property transfers, but they failed to preserve a disputed issue of material fact regarding the existence of fraudulent intent. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The Government's evidence amply supported the district court's finding of fraud. Avco Delta Corp., 540 F.2d at 262. To the extent the Troyers argue that the Government is barred by laches from foreclosing on its tax liens, the argument is unavailing. The doctrine of laches provides no defense to fraud. King v. Ionization International, Inc., 825 F.2d 1180, 1187 (7th Cir.1987); Central Railway Signal Co. v. Longden, 194 F.2d 310, 320 (7th Cir.1952).
 
 
 5
 AFFIRMED.
 
 ATTACHMENT
 UNITED STATES DISTRICT COURT
 NORTHERN DISTRICT OF INDIANA
 SOUTH BEND DIVISION
 United States of America, Plaintiff
 
 6
 v.
 
 Emmett K. Troyer, et al., Defendants
 
 7
 Cause No. S90-195 (RLM).
 
 
 8
 July 15, 1991.
 
 MEMORANDUM AND ORDER
 
 9
 This cause is before the court on the plaintiff's motion for summary judgment on all counts of the complaint. Defendants Emmett and Carol Troyer also seek summary judgment with respect to anticipated claims against them brought by the State of Indiana's Department of Revenue ("DOR"), a named defendant in this cause.
 
 
 10
 These matters were fully briefed by the parties. Both the government and the Troyers requested that the court rule without a hearing pursuant to Federal Rule of Civil Procedure 78. At first, the court concluded that a hearing on the motions would be useful. That hearing had to be cancelled due to the court's engagement in the jury trial of a criminal matter and, upon reflection, the court concluded that a hearing was unnecessary.
 
 I.
 
 11
 The United States brought this cause against primarily the Troyers, both as individuals and as trustees of the Life Science Church of South Bend. The Life Science Church has also been named as a defendant, along with the Church of St. Matthew, Standard Federal Bank, Fidelity Investment, Inc., and the DOR. The government seeks to reduce certain tax assessments against the Troyers to judgment and to foreclose on tax liens against two parcels of real estate, allegedly owned by the Troyers, in satisfaction of that judgment. The two plots of real estate at issue are located at 1820 East Colfax Avenue, South Bend, Indiana ("Colfax property"), and 3105 Mishawaka Avenue, South Bend, Indiana ("Mishawaka Avenue property").
 
 
 12
 The Troyers purchased the Colfax property in June, 1975. They mortgaged the Colfax property to Tower Federal Savings & Loan ("Tower"), predecessor in interest to Standard Federal, in July, 1975. That mortgage agreement included a provision requiring the Troyers to secure Tower's acceptance of any written assumption agreement from a successor in interest before the Troyers could be released from liability on the mortgage. Neither Tower nor its successor, Standard Federal, has accepted a written assumption agreement with respect to the Troyers' mortgage.
 
 
 13
 On November 10, 1977, the Troyers executed a quitclaim deed, attempting to transfer their interest in the Colfax property to the Life Science Church. The deed specified "One dollar and other valuable consideration" and, furthermore, that the transfer was to Emmett and Carol Troyer, as trustees of the Life Science Church.
 
 
 14
 On September 23, 1983, the Life Science Church executed a quitclaim deed with respect to the Colfax property to the Church of St. Matthew. The deed reflected consideration in the amount of $10,000.00, but evidence in the record confirms that neither the Troyers nor the Life Science Church ever received those funds. Emmett Troyer was trustee of the Church of St. Matthew when this deed (and the similar September, 1983 deed to the Mishawaka Avenue property) was executed.
 
 
 15
 The Troyers purchased the Mishawaka Avenue property in February, 1978. Following the purchase, the Troyers mortgaged the Mishawaka Avenue property to Fidelity Investment on February 27, 1978. The Troyers have never arranged for a successor in interest to assume their mortgage with Fidelity Investment. The principal balance due on that mortgage as of April 19, 1991 was $9,271.21, with interest accruing at the daily rate of $3.03.
 
 
 16
 On November 10, 1977, the Troyers executed a quitclaim deed, transferring their interest in the Mishawaka Avenue property to themselves, as trustees of the Life Science Church, for "One dollar and other valuable consideration." On September 23, 1983, the Life Science Church transferred its interest in the Mishawaka Avenue property to the Church of St. Matthew by quitclaim deed. Again, while the deed reflected consideration in the amount of $10,000.00, neither the Troyers nor the Life Science Church ever received that sum.
 
 
 17
 The Church of St. Matthew executed two $10,000.00 promissory notes in favor of the Life Science Church in September, 1983 as purported consideration for the transfer of the Colfax and Mishawaka Avenue properties. The $10,000.00 sums reflected amounts collectible by the Life Science Church "in the event its congregation did not remain as members of the congregation of the Church of St. Matthew for at least 90 days." The Church of St. Matthew states that it assumed the mortgages on those properties with Standard Federal Savings and Fidelity Investment, Inc. and thereafter made mortgage payments.
 
 
 18
 The Troyers remained in possession of the Colfax and Mishawaka Avenue properties after the 1983 conveyances, pursuant to an oral lease between the Troyers and the Church of St. Matthew requiring the Troyers to pay rent in the amount of the monthly mortgages due on the properties, plus an additional $10.00. The alleged oral lease also required the Troyers to keep insurance on the properties, to pay real estate taxes on them, and to maintain the properties in good condition.
 
 
 19
 The alleged oral lease was never reduced to writing, as required by IND.CODE 32-2-1-1, and purportedly ran from September, 1983 to May, 1989, when the Troyers were ousted from the Church of St. Matthew. Thereafter, the Troyers made mortgage payments on the Colfax and Mishawaka Avenue properties directly to the financial institutions.
 
 
 20
 The Troyers have retained uninterrupted possession of the Colfax and Mishawaka Avenue properties since acquiring those parcels in 1975 and 1978. They presently reside at the Colfax property. They have continued to pay the expenses of both properties and made improvements on the properties. In a state court proceeding the Troyers instituted against the Church of St. Matthew, the Troyers admitted that the transfers of their ownership rights to these properties were "solely for the purpose of defeating the provisions of the Internal Revenue Code ..."
 
 
 21
 In July, 1982, the Life Science Church filed for bankruptcy under Chapter 13 of the Bankruptcy Code; in October, 1982, the bankruptcy court converted the filing to one under Chapter 11. On May 19, 1983, the United States filed its proof of claim in the Life Science Church's bankruptcy case. In January, 1984, the government filed its objection to the debtor's plan of reorganization and disclosure statement with the bankruptcy court.
 
 
 22
 On May 26, 1987, the Internal Revenue Service ("IRS") made assessments against Emmett and Carol Troyer for unpaid withholding and Federal Insurance Contribution Act taxes for the fourth quarter of 1977, all four quarters of 1978 and 1979, and the first three quarters of 1980, for Federal Unemployment Act taxes for the 1978, 1979, and 1980 tax years, penalties, and interest. Notice of these assessments and demand for payment were sent to the Troyers on the same date. The Troyers have refused to pay the amounts assessed and the accompanying penalties, which presently total $50,031.19, not including statutory additions from the date of the assessments.
 
 II.
 
 23
 A party seeking summary judgment must demonstrate that no genuine issue of fact exists for trial and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Certain Underwriters of Lloyd's v. General Accident Ins. Co. of America, 909 F.2d 228, 231 (7th Cir.1990). If that showing is made and the motion's opponent would bear the burden at trial on the matter that forms the basis of the motion, the opponent must come forth with evidence to show what facts are in actual dispute. Lujan v. National Wildlife Federation, 110 S.Ct. 3177, 3186 (1990); Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Sims v. Mulcahy, 902 F.2d 524, 540 (7th Cir.), cert. denied, 111 S.Ct. 249 (1990). If he fails to do so, summary judgment is proper. Fitzpatrick v. Catholic Bishop of Chicago, 916 F.2d 1254, 1256 (7th Cir.1990); Tatalovich v. City of Superior, 904 F.2d 1135, 1142 (7th Cir.1990). A genuine factual issue exists only when there is sufficient evidence for a jury to return a verdict for the motion's opponent. Harbor House Condominium Ass'n v. Massachusetts Bay Ins. Co., 915 F.2d 316, 320 (7th Cir.1990); Hines v. British Steel Corp., 907 F.2d 726, 728 (7th Cir.1990). Summary judgment should be granted if no reasonable jury could return a verdict for the motion's opponent. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986); Visser v. Packer Engineering Associates, Inc., 924 F.2d 655, 660 (7th Cir.1991).
 
 
 24
 The parties cannot rest on mere allegations in the pleadings, Hughes v. Joliet Correctional Center, 931 F.2d 425, 428 (7th Cir.1991); McCarthy v. Kemper Life Ins. Companies, 924 F.2d 683, 687 (7th Cir.1991), or upon conclusory allegations in affidavits. Mestayer v. Wisconsin Physicians Service Ins. Corp., 905 F.2d 1077, 1079 (7th Cir.1990). The court must construe the facts as favorably to the non-moving party as the record will permit, Brennan v. Daley, 929 F.2d 346, 348 (7th Cir.1991); Soldal v. County of Cook, 923 F.2d 1241, 1245 (7th Cir.1991), and draw any permissible inferences from the materials before it in favor of the non-moving party, Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574 (1986); Illinois Bell Telephone Co. v. Hanes and Co., Inc., 905 F.2d 1081, 1087 (7th Cir.1990), as long as the inferences are reasonable. Bank Leumi Le-Israel, B.M. v. Lee, 928 F.2d 232, 236 (7th Cir.1991). The non-moving party must show that the disputed fact is material, or outcome-determinative, under applicable law. Johnson v. Pelker, 891 F.2d 136, 138 (7th Cir.1989).
 
 
 25
 Even on an issue of intent, summary judgment is proper if the party with the burden at trial presents no indication of the necessary motive or intent. Illinois Bell Telephone Co., 905 F.2d 1081, 1087 (7th Cir.1990); Holland v. Jefferson Nat'l Life Ins. Co., 883 F.2d 1307 (7th Cir.1989).
 
 
 26
 The court will address the motions with the above standards in mind.
 
 A.
 
 27
 The IRS asks the court to enter judgment as a matter of law on the tax assessments and penalties made against the Troyers and to foreclose on its liens against the Colfax and Mishawaka Avenue properties. The government contends that the Troyers' attempted transfers of their interests in those properties to the Life Science Church were, in effect, transfers to themselves and effected no legal change in ownership. The government further maintains that the purported transfers to the Church of St. Matthew were fraudulent conveyances and should be set aside as a matter of law. The government acknowledges that its legal rights in the Colfax and Mishawaka properties are subordinate to those of the mortgaging banks, Standard Federal Bank and Fidelity Investment.
 
 
 28
 The Troyers present three general positions in response to the government's motion. They contend that (1) the federal tax assessments against them are inaccurate; (2) the government should be barred from pursuing those claims in this cause because such were not timely (or properly) asserted in the prior bankruptcy proceeding involving the Life Science Church; and (3) the facts in the record do not support a finding that the transfers to the Life Science Church and/or the Church of St. Matthew were fraudulent.
 
 
 29
 The Church of St. Matthew also has objected to the IRS's summary judgment motion. The church asserts that it provided valid consideration for the conveyance of the Colfax and Mishawaka Avenue properties in 1983 in the two $10,000.00 promissory notes.
 
 
 30
 Neither the Troyers' nor the Church of St. Matthew's positions are well-taken. For the following reasons, the court will enter summary judgment in favor of the United States on its complaint in this cause.
 
 IV.
 
 31
 The federal tax assessments against the Troyers are valid as a matter of law. While the Troyers assert inaccuracies in the assessments, they have not come forward with any legal or factual attack that disturbs the legal presumption in favor of validity of tax assessments.
 
 
 32
 Once the United States has come forward with evidence that federal tax assessments have been made and that balances are due with respect to those assessments, there is prima facie proof that taxes are owing. United States v. Rindskopf, 105 U.S. 418, 422 (1881); Anastasato v. Commissioner, 794 F.2d 884, 886 (3rd Cir.1986); United States v. Stonehill, 702 F.2d 1288 (9th Cir.1983), cert. denied, 465 U.S. 1079 (1984). Here, the United States has met this burden by submitting several Form 4340 statements evidencing the taxes owed by the Troyers. Those submissions suffice to warrant a presumption of the validity of the IRS's assessments. Several courts have held that a Form 4340 submission is sufficient evidence of the making of an assessment to establish the government's prima facie case of tax liability. United States v. Chila, 871 F.2d 1015 (11th Cir.), cert. denied, 110 S.Ct. 498 (1989); United States v. Dixon, 672 F.Supp. 503, 506 (M.D.Ala.1987), aff'd, 849 F.2d 1478 (11th Cir.1988); G.M. Leasing Corp. v. United States, 514 F.2d 935, 941 (10th Cir.1975), rev'd on other grounds, 429 U.S. 338 (1977).
 
 
 33
 Once the IRS has shown evidence of an assessment, the burden shifts to the taxpayer to refute the validity of the tax liability. Helvering v. Taylor, 293 U.S. 507, 515 (1935); Calderone v. United States, 799 F.2d 254, 258 (6th Cir.1986); Anastasato v. Commissioner, 794 F.2d at 886; Avco Delta Corp. v. United States, 540 F.2d 258 (7th Cir.1976), cert. denied sub nom. Canadian Parkhill Pipe Stringing Ltd. v. United States, 429 U.S. 1040 (1977). Courts traditionally give deference to the tax assessments of the IRS and, absent proof in defense of delinquency, routinely reduce such assessments to judgment. Lasky v. C.I.R., 235 F.2d 97 (2nd Cir.1956), aff'd, 352 U.S. 1027 (1957); United States v. Mensik, 335 F.Supp. 770 (M.D.Pa.1971).
 
 
 34
 The Troyers have not come forward with evidence or legal authority to challenge the validity of the Form 4340 certificates, absent their own self-serving conclusions. While the Troyers assert a failure on the part of the IRS to file its claim properly in a prior bankruptcy proceeding, the Troyers provide no legal support for their implied suggestion that such a failure bars this action. Indeed, tax assessments are non-dischargeable in bankruptcy proceedings. 11 U.S.C. § 523(a)(1)(A). Further, the debtor before the bankruptcy court was the Life Science Church, not the Troyers; the tax assessments in this cause are against the Troyers, not the Life Science Church.
 
 
 35
 The Troyers clearly have failed to meet their burden in challenging the validity of the federal tax assessments recorded against them in May, 1987. Accordingly, giving a presumption of validity to those assessments, this court may properly reduce them to judgment.
 
 V.
 
 36
 The IRS further asserts that the Troyers have maintained their ownership interests in the Colfax and Mishawaka Avenue properties, notwithstanding attempted transfers of those plots to the Life Science Church and the Church of St. Matthew. Accordingly, the government asks that it be permitted to foreclose on the tax liens against the Colfax and Mishawaka Avenue properties, subject to the mortgage rights of Standard Federal Bank and Fidelity Investment. The government has requested appropriate relief.
 
 A.
 
 37
 Initially, the IRS contends that the transfers to the Life Science Church affected no legal change in ownership and were, in effect, transfers from the Troyers in their individual capacities to the Troyers in their capacities as trustees of the Life Science Church. The government refers this court to Troyer v. Commissioner 57 T.C.M. (CCH) 334, 338 (1989), in which the tax court held that the Troyers' attempted transfers to the Life Science Church were transfers to themselves. Citing Ferrell v. Pierce, 785 F.2d 1372, 1374 (7th Cir.1986), the government argues that this court must give collateral estoppel effect to the tax court's determination on this issue.
 
 
 38
 To give collateral estoppel effect to the tax court's determination, this court must find that (1) the party against whom the issue is asserted is the same party who lost the issue in the earlier proceeding; (2) the issue was litigated and decided on the merits; (3) resolution of the issue was necessary to the resolution of the earlier case; and (4) the issues are the same. Kunzelman v. Thompson, 799 F.2d 1172, 1176 (7th Cir.1986). The parties in the cause before this court were not all before the tax court when it rendered its judgment with respect to the Troyers' transfer of property rights to the Life Science Church: the church was not a party to those proceedings. Accordingly, this court cannot invoke the doctrine of collateral estoppel with respect to issues resolved by the tax court below.
 
 B.
 
 39
 Alternatively, the IRS asserts that the property transfers from the Troyers to the Life Science Church and then to the Church of St. Matthew were all fraudulent conveyances. The Troyers contend that it was not their intent to defraud the IRS, nor do the undisputed facts suggest evidence of fraud. The Church of St. Matthew further alleges that the quitclaim deeds executed by the Life Science Church in its favor are valid. Neither law nor fact support the defendants' positions, however.
 
 
 40
 Federal courts apply state substantive laws in actions to set aside a fraudulent conveyance and foreclose on a federal tax lien. Commissioner v. Stern, 357 U.S. 39, 42-45 (1958). State law must be consulted to determine the extent to which a taxpayer has an interest in property for the purpose of imposing a federal tax lien. Once state law has determined the extent of the taxpayer's legal interest in property, federal law dictates the tax consequences. Medaris v. United States, 884 F.2d 832 (5th Cir.1989); S.E.C. v. Levine, 881 F.2d 1165 (2nd Cir.1989); United States v. Phillips, 715 F.Supp. 81 (S.D.N.Y.1989); Eskanos v. Alpha 76, 712 F.Supp. 819 (D.Colo.1989); Loving Saviour Church v. United States, 728 F.2d 1085 (8th Cir.1984). Since both the properties in question and the tax indebtedness have an Indiana situs, Indiana law appears appropriate for examination.
 
 
 41
 Principles of Indiana law on fraudulent conveyances are well established. IND.CODE 32-2-1-14 et seq. Under Indiana law, fraudulent intent generally is a question of fact and no conveyance or charge will be adjudged fraudulent against creditors solely on the grounds that it was not founded on valuable consideration. U.S. Marketing Concepts v. Don Jacobs, 547 N.E.2d 892 (Ind.App.1989). Other factors must be considered. Purple v. Farrington, 119 Ind. 164, 21 N.E. 543 (1889); Pence v. Rhonemus, 58 Ind. 268, 108 N.E. 129 (1915). The character of a sale or transfer of property must be judged by the circumstances existing at the time of the conveyance and not by subsequent events having no actual connection with the transaction. Stamper v. Stamper, 227 Ind. 15, 83 N.E.2d 184 (1949); Deming Hotel Co. v. Sisson, 216 Ind. 587, 24 N.E.2d 912 (1940); Ray v. Simons, 76 Ind. 150 (1881).
 
 
 42
 While the determination of whether a conveyance was fraudulent involves the consideration of various elements and factors, certain circumstances so frequently indicate transfers to defraud creditors that they are recognized as indicia or "badges of fraud". Arnold v. Dirrim, 398 N.E.2d 442 (Ind.App.1979); Cook v. Ball, 144 F.2d 423 (7th Cir.), cert. denied, 323 U.S. 761 (1944). "Badges of fraud" from which fraudulent intent may be inferred include: the debtor's transfer of property during pendency of suit; transfer of property that renders the debtor insolvent or greatly reduces the estate; series of contemporaneous transactions which strip the debtor of all property available for execution; secret or hurried transactions not in the usual mode of doing business; any transaction conducted in a manner different from customary methods; transactions whereby the debtor retains benefits over transferred property; little or no consideration in return for transfer; and transfer of property between family members. U.S. Marketing Concepts v. Don Jacobs, 547 N.E.2d 892 (Ind.App.1989); Jones v. Central National Bank of St. Johns, 547 N.E.2d 887 (Ind.App.1989).
 
 
 43
 The Troyers' conduct evidences a clear intent to defraud the IRS. Several "badges of fraud" mark the attempted transfers of the Colfax and Mishawaka Avenue properties from the Troyers to the Life Science Church. The church gave no apparent consideration for the two properties' transfer. While the quit claim deeds suggested "One dollar and other valuable consideration", none of the defendants have brought forth evidence of other valuable consideration. Additionally, despite the apparent transfer of the Colfax and Mishawaka Avenue properties, they retained all apparent ownership rights over those properties, including obligations on two mortgages. The two purported transfers occurred at approximately the time the Troyers first became delinquent in their payment of federal taxes. Moreover, the fact that such transfers occurred at about the same time, and in the same unconventional manner, suggests that the Troyers sought to deplete their available assets quickly.
 
 
 44
 Many of the badges of fraud discussed above apply similarly to the attempted 1983 transfers to the Church of St. Matthew. While the quitclaim deeds evidencing those transfers suggested consideration in the amount of $10,000.00, none of the parties dispute the fact that such consideration was never given. The Troyers continued to retain control over the Colfax and Mishawaka Avenue properties and continued to make the mortgage payments (albeit through the church) on those properties, as well as payments of all other property expenses. These purported transfers were executed simultaneously and at the same time the Life Science Church (the purported owner of the properties) had filed bankruptcy.
 
 
 45
 In addition, evidence in the record indicates that the Troyers made admissions concerning their motives in the property transfers. While the Troyers have tried to deny prior statements of their intent to avoid federal taxes, their arguments fail to erase those previous admissions.
 
 
 46
 Accordingly, for the reasons stated above, the court concludes that the Troyers' conveyances of the Colfax and Mishawaka Avenue properties to the Life Science Church, and the subsequent conveyances of those properties to the Church of St. Matthew, were fraudulent. Those attempted transfers are void as a matter of law. The court finds that the Troyers hold property rights in those parcels, subject to the mortgages of Standard Federal Bank and Fidelity Investment, Inc.
 
 C.
 
 47
 Section 6321 of the Internal Revenue Code provides for the imposition of a federal lien encompassing "all property and rights to property whether real or personal" belonging to "a delinquent taxpayer". The tax lien arises at the time of the assessment of the tax liability, continuing thereafter until the underlying tax liability is satisfied or collection is barred by the statute of limitations, and attaches to after-acquired property of the taxpayer. 26 U.S.C. §§ 6322, 6502; Glass City Bank v. United States, 326 U.S. 265 (1945); J.D. Court, Inc. v. United States, 712 F.2d 258, 260-261 (7th Cir.1983), cert. denied, 466 U.S. 927 (1984).
 
 
 48
 Pursuant to this authority, the United States is entitled to execute its tax liens against the Colfax and Mishawaka Avenue properties. As agreed by the IRS and the mortgaging banks, those liens are subject to the superior interests of Standard Federal Bank and Fidelity Investment, Inc.
 
 VI.
 
 49
 The Troyers have moved for partial summary judgment on what appears to be anticipated claims by the Indiana Department of Revenue. The IRS added the DOR as a party "because it may claim an interest in real property which is involved in this action as it has recorded judgments against Emmett K. Troyer and Carol L. Troyer for unpaid Indiana Gross Income Taxes which cloud the title to real property involved in this action." In response to that portion of the IRS's complaint, the DOR acknowledges that tax assessments have been made against the Troyers for the tax period in 1982 and 1986. However, nothing in the record suggests when such assessments were made or any priority they may have to the federal tax assessments.
 
 
 50
 In their brief motion, the Troyers present the following statement of (what they perceive as) uncontested facts:
 
 
 51
 1. That on May 30, 1984, St. Joseph County Circuit Court Judge John Montgomery entered an order vacating all tax assessments against these defendants assessed by the Indiana Department of Revenue (copy of Order attached hereto marked Exhibit 1).
 
 
 52
 2. That the tax claims filed in this court by the Indiana Department of Revenue as due and owing from the Troyers are claims that were included and vacated by Judge Montgomery in the state court proceedings Cause No. N-3931.
 
 
 53
 Exhibit 1 to the Troyers' motion is an order from the St. Joseph Circuit Court entered in State of Indiana, ex rel. The Indiana Department of State Revenue v. Troyer Pool & Building, Inc., Cause No. N-3931, on May 30, 1984. It reads as follows:
 
 
 54
 This matter coming before the Court for dismissal on the oral agreement of the parties reached through their respective attorneys of record and the Court being fully advised that the parties have agreed that this cause and all ancillary proceedings raised therein by the defendant be dismissed on the condition that the defendant and CAROL TROYER and EMMETT TROYER individually be allowed and granted the right to open up any and all assessment and claims made by the State of Indiana Department of Revenue for income tax claimed or alleged to be due from said defendant and said individuals and that any and all judgments entered affecting said persons for said taxes and claims be vacated and set aside, and that in accordance with said agreement the parties hereto have relied upon said agreement and have accordingly ceased any and further proceedings in this case in reliance thereon and the Court being fully advised in the premises:
 
 
 55
 IT IS HEREBY ORDERED that the above-entitled cause and all ancillary proceedings instituted therein by plaintiff or defendant, pursuant to said agreement referred therein by plaintiff or defendant, pursuant to said agreement referred to above and on condition thereof be and the same hereby is dismissed in accordance with the foregoing agreement.
 
 
 56
 The state court order did not foreclose the DOR from reopening tax claims against the Troyers. It approved a settlement agreement between those parties in the state court proceedings. Accordingly, the Troyers have not demonstrated that no genuine issue of material fact exists with respect to potential DOR tax claim against them or their properties. Their motion for partial summary judgment, therefore, will be denied.
 
 VII.
 
 57
 Accordingly, this court now finds that there is no genuine issue of material fact that the Troyers' attempted transfers of their property interest in the Colfax and Mishawaka properties were fraudulent. Those efforts to transfer the properties, therefore, are void as a matter of law.
 
 
 58
 For the foregoing reasons, the court DENIES the Troyers' motion for partial summary judgment and GRANTS the United States of America's motion for summary judgment. Judgment shall be entered on those tax assessments made by the Internal Revenue Service on May 26, 1987 against Emmett and Carol Troyer in the amount of $50,031.19, along with statutory additions accruing from the May 26, 1987 date of assessment. The court further finds that the Troyers hold ownership rights as mortgagors to the real properties located at 1820 East Colfax Avenue and 3105 Mishawaka Avenue, in South Bend, Indiana, subject to those rights of Standard Federal Bank and Fidelity Investment, Inc., and that the United States is entitled to foreclose on those properties in satisfaction of its tax assessments against the Troyers pursuant to 26 U.S.C. § 6321.
 
 
 59
 SO ORDERED.
 
 
 60
 ----------------
----------------Robert L. Miller, Jr., Judge
----------------United States District Court
 cc: Jones
 Johnson
 Ferlicca
 Nussbaum
 Steury
 Masters
 Troyer(s)
 Order Book
 
 
 
 [1]
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Circuit Rule 34(f). The Troyers have filed such a statement and requested oral argument. Upon consideration of that statement, the briefs, and the record, the request for oral argument is denied and the appeal is submitted on the briefs and record
 
 
 [2]
 Emmett and Carol Troyer signed the notice of appeal both in their individual capacities and as trustees of the Life Science Church. The Troyers, however, could not represent the Church if it were a separate entity. Scandia Down Corp. v. Euroquilt, Inc., 772 F.2d 1423, 1427 (7th Cir.1985) (holding that corporations must appear through counsel), cert. denied, 475 U.S. 1147 (1986). Because no proper notice of appeal was filed on behalf of the Church, we have no jurisdiction over its appeal
 
 
 [3]
 Also named as defendants were the Church of St. Matthew, Standard Federal Bank, Fidelity Investment, Inc., and Indiana's Department of Revenue. These entities never filed notices of appeal, and so are not parties to this proceeding
 
 
 [4]
 For the same reason, the constitutional challenges raised by the Troyers are also waived